## T. R. Bonner and J. M. Eddy, Receivers, etc., v. Serina Wingate et al.

### No. 3122.

1. **Damages from Defective Culvert on Railway—Charge.**—In an action for damages for negligently causing the death of the son, etc., of plaintiffs, the negligence involved was the alleged defective construction of a culvert. The culvert in a rain storm gave way, causing a wreck of a passing train. It was shown that the flood of water upon the culvert was increased by a dam above it giving way. *Held:*

1. It was proper to refuse a charge that "if the giving way of the water tank above the culvert, and the washing away of the fencing, * * * over which the defendant had no control, caused the culvert to give way, or contributed to that result, then the giving away of said culvert was not the result of the negligence of the railway company."

2. Such charge, in effect, would have told the jury that plaintiffs could not recover if the breaking of the dam contributed to the breaking of the culvert, although the construction of the culvert was defective.

3. The question for the jury was, Would the accident have occurred but for the negligent construction of the culvert?

4. The court properly instructed the jury that the liability of the railroad depended upon whether due care and skill had been exercised in the construction of the culvert, and informed them that if the culvert was properly constructed and kept in repair with

sufficient capacity to carry off water that might be expected to pass through it, then defendant would not be liable.

2. **Verdict for $10,000 Not Excessive.**—See facts where a verdict for $10,000 in favor of the mother, widow, and children of a railway employe killed by the negligence of the company held not excessive.

Appeal from Gregg. Tried below before Hon. Felix J. McCord.

On the 26th of June, 1889, J. E. Wingate was employed by the International & Great Northern Railroad, through T. R. Bonner and J. M. Eddy, its receivers, as locomotive fireman on one of defendants' freight trains going west from Palestine at night. Near Milano Junction, on defendants' road, said train ran into a culvert which had been washed away during the night, and said J. E. Wingate was killed in the wreck.

This suit was brought by Mrs. Serina Wingate, his mother, and Mrs. Laura A. Wingate, his wife, for herself and as next friend of her two minor children C. E. and Alice I. Wingate, for $50,000 damages suffered by the death of said J. E. Wingate, caused, as they alleged, by the negligence of defendant company in not properly constructing said culvert.

Defendants plead general denial and not guilty; and further, that on the night of the accident one of the heaviest rains fell that had ever been known in that country, and that about one-half a mile above the culvert a citizen had recently made a large pond of water or tank by constructing a dam across a valley and ravine leading into and through said culvert, which dam gave way on the night of the accident, emptying an immense volume of water and fencing, etc., upon and against said culvert, causing it to give way; that said culvert was properly constructed with the best material, and according to the most approved plans of the best civil engineers, and was built out of stone masonry and earth, and was sound, substantial, and safe for the purpose for which it was intended and used, and had withstood the elements and the storms and floods for more than sixteen years and ever since it had been built without giving way, and defendants had no reason to believe that it would ever give way.

Defendants further set up that deceased and his fellow servants in charge of and operating said train were guilty of contributory negligence in running the train upon the culvert without examination, because they knew of the tremendous rainfall, which was unknown to defendants. Defendants further alleged that they were not guilty of negligence on that occasion, because they had track walkers out all along the line of the road all that night, examining and repairing the track where needed as fast as they could travel.

The jury rendered a verdict for plaintiffs for $10,000, and apportioned the same as follows: Mrs. Serina Wingate, $2000; Mrs. Laura A. Wingate, $2000; C. E. Wingate, $3000; Alice Ione Wingate, $3000. The defendants appealed.

The opinion contains additional facts.

*Gould & Camp,* for appellants.— 1. The charge of the court should submit to the jury every material issue made by the pleadings and evidence. [See opinion.] Rev. Stats., art. 1317; Railway v. Rider, 62 Texas, 267.

2. If the culvert in question was properly constructed and maintained, and was destroyed by an unprecedented and unusual rainfall, or by the giving away of a private dam above it, or by either or all of said causes, defendants would not be liable, especially if said private tank was built after the culvert. Railway v. Halloren, 53 Texas, 46.

3. In the absence of law defining the acts which constitute negligence it is a fact to be found by the jury on evidence, and it is error to instruct the jury as to what acts constitute negligence when the law is silent as to such acts. Railway v. Murphy, 46 Texas, 356; Railway v. Wilson, 60 Texas, 142; Railway v. Levi & Bro., 59 Texas, 674; Railway v. Greenlee, 70 Texas, 553.

4. If it was proper under the law for the charge to designate what acts would constitute negligence, the above charge was erroneous, in that it required perfection in the construction of railroads, which the law does not. Railway companies are "only required to so construct their road beds and tracks as to avoid such dangers as could be reasonably foreseen by competent and skillful engineers;" and they are not required to provide against extraordinary floods. Railway v. Halloren, 53 Texas, 46.

5. A verdict without evidence to support it should be set aside; and the evidence in this case not showing negligence on the part of defendants, it should have been set aside and a new trial granted. Bohen v. Railway, Am. and Eng. Ry. Cases, 276.

*Richard B. Levy, R. C. De Graffenreid,* and *J. S. Blanton,* for appellees.— 1. If the giving way of a private dam above appellants' culvert was caused by the alleged unusual and unprecedented rainfall, then the giving way of the private dam was only an incident in the line of causation, and the rainfall itself was the efficient cause of the injury, and the giving way of the dam does not therefore constitute a separate and distinct material issue. The charge of the court as given comprehended all conditions of the heavy rain when it says: "If the rain was unprecedented, and could not have been anticipated by reasonable care in furnishing a culvert to carry off same, defendants would not be liable." This charge of the court properly presented the true issue to the jury. Whart. on Neg., sec. 85; Railway v. Medaris, 64 Texas, 92.

2. The building of the private dam in question after appellants' road was established and put in operation imposed upon appellants the duty of guarding the same by that prudence, foresight, and the use of all the means within the reach of skillful and prudent workmen in that line of business, if any degree of prudence and foresight would excuse. Railway

v. Vallie, 60 Texas, 481; Adams' Eq., secs. 210, 211; 1 Am. State Rep., 266; Railway v. Bridge, 11 Am. State Rep., 53.

3. Appellants should have sought, and it was their duty to do so, injunctive relief against the further continuance of the artificial accumulation of water so near their property as in case of the breaking loose of the same it was likely to endanger the road bed and imperil the lives of the public traveling on appellants' railroad, and their employes.

STAYTON, CHIEF JUSTICE.—Appellees, as mother, wife, and children of J. E. Wingate, deceased, brought this action to recover damages claimed to have been sustained by them from his death, which is alleged to have been caused by the negligent construction of a culvert on the railroad of which appellants are receivers.

The trial resulted in a judgment in favor of appellees for $10,000, which was apportioned.

That the accident occurred from a washout at the culvert is not denied, but it was claimed that the culvert was well constructed, and that the washout occurred on account of an unprecedented rainfall.

It was further claimed that a third person had constructed a dam across the ravine on which the culvert was, above it, and on his own land, which gave way and precipitated the pent up waters on the culvert, which caused the embankment contiguous to it to give way, although properly constructed.

There was evidence showing the breaking of the dam and that the water flowed from it upon the culvert, and there was evidence tending to show that the culvert was skillfully constructed, and to the contrary.

The defendants asked the following charge, which was refused: "Defendants ask the court to instruct the jury that if the giving away of the water tank above the culvert, and the washing away of fencing, which water tank was the property of Henry Smith or any other person, and over which defendants had no control, caused the culvert to give away or contributed to that result, then the giving away of said culvert was not the result of the negligence of the company, and you will find for the defendants." This ruling of the court is assigned as error, but we are of opinion that the charge was properly refused.

The question was whether such care and skill had been used in the construction of the culvert as was requisite from the railway company or from the receivers, and the charge requested would in effect have informed the jury that appellees were not entitled to recover if the breaking of the dam contributed to the breaking of the culvert or embankment although the construction of the latter was faulty.

It further declared to the jury, in effect, that the railway company could not be deemed negligent if the breaking of the dam caused or contributed to the breaking of the culvert, but we do not see that if the breaking of

the dam caused the culvert to break or contributed to that result that these things would even tend to show that the culvert was properly constructed. If the construction of the culvert was faulty and it would not have broken but for the additional contribution of water flowing at a given time upon it from the breaking of the dam, even then appellees were entitled to recover, for they would certainly be entitled to recover if the negligent manner in which the culvert was constructed contributed to the injury, although the negligence of a third person may have contributed to the same result. The question was, would the accident have occurred but for the negligent construction of the culvert?

The court gave the following as a part of the charge: "The law calls upon the defendants to so construct and keep in repair their road bed and to so build their bridges and culverts with reference to the lay of the land as will be sufficient to carry off the water, and if they so fail and cause the water to bank up and undermine the track, causing injury, defendants would be liable." It is urged that this was erroneous, "because said charge requires too much of defendants, and makes no allowance for unusual or unexpected heavy rains or the filling up of said culvert by the washing away of private property over which the defendants had no control." The court, however, further charged "that if the rain was unprecedented, and could not have been anticipated by reasonable care in furnishing a culvert to carry off same, then such a freshet would be one of those acts that could not by skill be avoided, and the defendants would not be liable, and you will so find."

Throughout the charge the court instructed the jury that the liability of appellants depended on whether due care and skill had been exercised in the construction of the culvert, and informed them that if the culvert was properly constructed and kept in repair, with sufficient capacity to carry off water that might be expected to pass through it, then appellants would not be liable.

Taken altogether, the charge in this respect fairly submitted the law to the jury. It is assumed that the charge, in effect, informed the jury that appellants were liable if by the exercise of any degree of care and skill the accident could have been provided against, but we do not find the charge susceptible of such a construction.

It is urged that a new trial should have been granted because there was no sufficient evidence to fix liability on appellants, and because of an excessive verdict. There is some conflict in the evidence, but there was much evidence tending to show that the construction of the culvert was faulty, that it had once or twice before washed out, and that in its repair no improvement was made in its structure. It was further shown that on former occasions rainfalls had occurred which were as heavy if not heavier than that which caused the culvert to give way at the time the accident occurred.

The verdict seems large, but the deceased was a young and strong man, who devoted his earnings to the support of appellees, and his earnings during some months amounted to more than $100 per month. He was engaged in a business in which it might reasonably be expected that, if faithful, he would be promoted to a more valuable position.

We find no error requiring a reversal of the judgment, and it will be affirmed.

*Affirmed.*

Delivered October 31, 1890.