INTERNATIONAL & GREAT NORTHERN RAILWAY COMPANY V. R. B. McRAE.

No. 3125.

1. **Duty of Common Carriers of Live Stock.**—It is the duty of a railway company carrying live stock to provide places where stock so carried may be fed and watered in any kind of weather without injury, so far as this can be done by the use of proper care. It was proper to refuse an instruction, "that if the defendant's pens furnished plaintiff's stock at Palestine were good and suitable in ordinary good weather, but were muddy by reason of recent rains, then plaintiff would not be responsible for damages resulting from the condition of said pens."

2. **Evidence—Common Law.** — An instrument was offered by the defendant, signed by the plaintiff and the conductor in charge of the train after leaving Palestine, showing the condition of the stock at its date. Defendant also offered to prove the same fact by other testimony. The instrument was signed by a witness not called nor his absence accounted for. On objection to the instrument for the reason that it was not proved by the subscribing witness the court excluded it. The ruling was in accordance with law. Such was the common law when adopted as the rule of decision in this State.

APPEAL from Anderson. Tried below before Hon. F. A. WILLIAMS. The opinion states the case.

*Gould & Camp*, for appellant.—1. Neither the law nor the contract required defendant to furnish covered pens for plaintiff's stock. If the pens were otherwise suitable and comfortable, the defendant would not be responsible for the condition of said pens by reason of rain and mud.

2. "The admissions of a party or his agent are admissible in evidence when offered by the adverse party," and the court should have admitted in evidence the admissions of plaintiff, as to the condition of said stock, made to the conductor.

*Greenwood & Greenwood,* for appellee.—1.  The law made it the duty of the appellant as a common carrier of live stock to furnish suitable pens or places along the route to destination for the comfortable resting, feeding, and watering of appellee's horses.  Rev. Stats., art. 284.

2.  When a written instrument has been produced and freed from suspicion, before it can be introduced as evidence it must be proved by the subscribing witnesses, if there be any, or at least by one of them. 1 Greenl. on Ev., sec. 569, and notes.

STAYTON, CHIEF JUSTICE.—This action was brought by appellee to recover damages on account of alleged injuries to horses shipped by him over appellant's railway, caused by alleged negligence and wrongful act on the part of the railway company or its servants, and resulted in a judgment for $1045 in favor of plaintiff.

Among other grounds for damages, it was claimed that the stock pens at Palestine, a place where it was necessary to feed the horses, were in such condition that this could not be done, and that the pens were so muddy that the horses were injured from that cause while in the pens.  There was evidence tending to sustain these averments, and the court gave a proper charge on that branch of the case; but it is claimed that the court erred in refusing to give a charge requested by appellant, which was as follows:  "You are further instructed, that if the pens defendant furnished plaintiff's stock at Palestine were good and suitable in ordinary good weather, but were muddy by reason of recent rains, then defendant would not be responsible for damages resulting from the condition of said pens."

The law makes it the duty of all common carriers "who convey live stock of any kind to feed and water the same during the time of conveyance, * * * unless otherwise provided by special contract" (Rev. Stats., art. 284); and if the cars in which they are transported be not so constructed that this may be done without unloading, then it becomes the duty of a railway company carrying such stock to provide places where they may be unloaded, watered, and fed without injury; and it is not enough that the places so prepared may be "suitable in ordinarily good weather," for such freight must be transported during bad weather as well as good, and it is the duty of the carrier to provide places where this can be done in any kind of weather without injury to the stock, so far as this can be done by the use of proper care.

There was evidence tending to show that much of the injury to the horses occurred before they left Palestine, and on the trial defendant offered to introduce in evidence a paper signed by plaintiff at Longview, a place beyond Palestine, showing that when the horses reached Longview only two or three of them were injured, and that the others were in good condition.  The bill of exceptions shows that this paper was signed by the conductor on appellant's train, as well as by plaintiff,

and that it was also signed by another person as a witness. Defendant proposed to prove the execution of the paper by the conductor, and also to prove the same facts by him that were shown by the paper; but plaintiff objected to this evidence, on the ground that the execution of the paper was not proved by the person who signed it as a witness, and this evidence was excluded, as was that of the conductor offered to prove the same facts. This ruling of the court is assigned as error.

The general rule is, that the execution of instruments having subscribing witnesses must be proved by such witnesses, or good reasons shown why this can not be done, and this rule has been applied to instruments not evidencing contracts, such as notices to quit, receipts, and like papers. McMahan v. Grady, 5 S. & R., 314; Halbert v. Hayne, 6 Binney, 16; Doe v. Durnford, 2 M. & S., 64; Higgs v. Dixon, 2 Starkie, 181. Such we must concede to have been the rule at common law as practiced in England on December 20, 1836, when the statute was passed making the common law of England as there practiced applicable to evidence. This rule was kept in force when the Revised Statutes were adopted, and has not since been changed; but it might be worthy of the consideration of the Legislature whether such a rule ought to be applied in any case in which the law does not require an instrument to be authenticated by attesting witnesses. In England we understand the rule to have been so changed by statute as to render it unnecessary to call attesting witnesses in any case in which the law does not require such instrument to be so attested. Best on Ev., 221. While this does not affect the question before us, it tends to show that a people so conservative as the English have recognized the fact that the unrestricted rule itself was hurtful, or that the courts in its application had carried it beyond its original purpose to a point not consistent with or not necessary to the proper administration of justice. The paper is not before us, but the bill of exceptions shows that the company required the conductor as well as the shipper to sign such papers, and that it required the signatures of those persons to be witnessed by another. The reason why it was required of the shipper doubtless was to have an admission from him as to the condition of his stock at given points, and the inference is that the statement by the conductor was required in order that upon any change of conductors the company might know the condition of the shipment at the point where one conductor ceased to have control of it and turned it over to another. Such information might be valuable as an admission and in many other ways to a railway company; and when under its rules the admissions of the shipper and conductor are required to be in writing, attested by a third person, and are so made, then we are of opinion that it is necessary to prove the instrument containing such admissions by the testimony of the subscribing witness, unless facts are shown which excuse this. No effort is shown to have been made to

prove the execution of the instrument by the subscribing witness, nor was it shown that his evidence might not be obtained; and under this state of facts the court did not err in excluding the instrument, nor in excluding the testimony of the conductor in so far as it related to what was contained in it.

The evidence introduced to show the amount of damages plaintiff was entitled to was of the character to which parties must necessarily resort in such cases, was relevant, and was such as would have justified a larger verdict, and the court did not err in admitting it.

The judgment was against the defendant railway company; but it coming to the knowledge of the court in some way that its property was in the hands of receivers, the court directed that the judgment be certified to the court having control of the receivership for payment, and provided that execution should issue against the company in the event it was put in possession again of its property before the judgment was satisfied.

So much of the judgment as suspended plaintiff's right to an execution and required the judgment to be certified for settlement to the court controlling the receivership may have been unauthorized; but this is not a matter of which appellant can complain, and appellee does not.

We find no error, and the judgment will be affirmed.

*Affirmed.*

Delivered December 22, 1891.