## B. M. BURGHER ET AL. V. J. G. HENDERSON.

### No. 616.

1. **Practice—Harmless Error.**—The admission of testimony in regard to a fact already proven by other testimony not objected to and not controverted, if error at all, is harmless.

2. **Same.**—In a case tried before the court without a jury, where the bill of exceptions recites that evidence erroneously admitted was not considered, its admission is not reversible error.

3. **Same—Objections to be Promptly Urged.**—An objection to conclusions of fact by the court below, such as that the allegata and probata do not correspond on a minor point, if made for the first time in the appellate court, in a case where such conclusions are fully supported by the evidence upon the main issue, can not be sustained.

4. **Homestead Bought Subject to a Lease—Designation—Occupancy.**—H. purchased land with the purpose of making it his homestead, and took possession of a few acres of it, the remainder having been leased by his vendor for the succeeding two years. H. lived on his mother's place during the two years, built a barn on the leased part of his land during that time, and moved his family to the premises as soon as the lease expired. *Held*, that there was a sufficient designation of the homestead and evidence of intention as against a purchaser at execution sale having actual notice, there given, of the homestead claim.

APPEAL from Delta. Tried below before Hon. E. W. TERHUNE.

*J. A. B. Putnam*, for appellants.—1. The best evidence is to be produced. Sayles' Civ. Stats., p. 2245, rule 9; 1 Greenl. Ev., sec. 86.

2. The allegata and probata must correspond, and evidence not anticipated by proper allegations in the pleadings should be disregarded, and will not support a recovery. Edrington v. Newland, 57 Texas, 632; Dennison v. League, 16 Texas, 408; Hall v. Jackson, 3 Texas, 305.

3. Appellee purchased the land September 27, 1887. He never resided upon it until after the levy and sale in the fall of 1889. He made during the time such ordinary improvements as might be required for the convenience of his tenant. He was residing with his family on his mother's farm, renting land from her and cultivating it. The place he was residing upon and cultivating was in law his homestead, and he could not have two homesteads. Philleo v. Smalley, 23 Texas, 499; Fort v. Powell, 59 Texas, 321; Andrews v. Hagadon, 54 Texas, 571; Skaggs v. Mulkey, 1 Posey's U. C., 488; Johnston v. Martin, 16 S. W. Rep., 550.

4. Appellee voluntarily purchased the land, knowing that he could not obtain possession of it until after the expiration of more than two years. He did not reside upon it until after levy and sale. The purchase must be made with a view of early occupancy as a home, and such early occupancy is essential to secure its exemption as a homestead. Gardner v. Douglass, 64 Texas, 79; Barnes v. White, 53 Texas, 631; Edwards v. Frey, 9 Kas., 425.

*Lane & Young,* for appellee.—1.   Collateral and immaterial facts and issues may be proved by secondary evidence; and the rule as to allegata and probata does not apply to matters of this kind.

2.   A person's purchasing a tract of land with the intent of making it his homestead constitutes the same his homestead, and his using and improving the same, and doing other like acts looking toward settling and living upon it, are evidence of the intent.   Wagon Co. v. Kenedy, 75 Texas, 212; Reinstein v. Daniels, 75 Texas, 640; Watkins v. Davis, 61 Texas, 414.

LIGHTFOOT, Chief Justice.—This is an action of trespass to try title in ordinary form, brought by appellants, B. M. Burgher and W. E. Stephens, against appellee, J. G. Henderson, in the District Court of Delta County, on August 27, 1892, to recover 130 acres of land in said county.   Appellants claimed the land under execution sale (levy made October 8, 1889) and sheriff's sale, the land being levied upon as the property of appellee.   Appellee answered by plea of not guilty, and by special answer, alleging, that at the time of the levy and sale the land was the homestead of himself and family, and setting up that at the time he purchased the same, his vendor had the premises rented out to a tenant for the year 1887, and that he could not get possession of all of said land until the expiration of said tenant's term, and that at the expiration of said tenancy he moved with his family upon said land, and has ever since occupied it as his homestead.   The case was tried before the court without a jury, and there was a judgment for defendant Henderson, from which this appeal was taken.

The conclusions of fact filed by the court below are adopted, as follows:

"1.   Both parties claim the land in controversy under T. S. Crowder, as common source.

"2.   T. S. Crowder conveyed the land by deed to defendant, J. G. Henderson, September 29, 1887.

"3.   Parlen, Orendorff & Co. recovered judgment in the County Court of Dallas County against defendant, Henderson, February 12, 1889, on which execution issued to the sheriff of Delta County September 26, 1889, which was by him levied October 8, 1889, upon the land described in the petition, and it was duly sold by such sheriff on the first Tuesday in November, 1889, to William Bell, and a valid deed made to him.   Bell was acting for plaintiffs, and the deed made him was for them, and Bell deeded them the land April 4, 1890.

"4.   Henderson and Crowder were brothers-in-law, owning adjoining farms, and Crowder also owned a tract of 136 acres, which was the tract conveyed to Henderson.   Henderson was a married man, and lived with his family on his farm, which was all the land he owned. He exchanged places with Crowder, September 29, 1887, Crowder giving him the 136 acres, including that in controversy, for Henderson's

homestead adjoining him.   Henderson bought this place for a homestead.

"5.  This tract conveyed to Henderson was a farm of 136 acres, of which 130 acres was off one survey, and six acres off another—it being all in one contiguous body—the six acres being separated from the other by a wagon road.   The 130 acres tract was all inclosed under one fence, and had sixty-five acres in cultivation, the remainder being meadow and pasture.   The six acres was unfenced prairie in front of the residence.

"6.  Crowder had the place rented to one Williams in 1887, who was in possession when he sold to Henderson in August, 1887.   He rented the cultivated land to one Matthews for the years 1888 and 1889, and took his notes for such rent.   Before Crowder would sell to Henderson, he obtained Matthews' approval of the trade, and when he sold, he transferred to Henderson the rent notes, and Matthews became Henderson's tenant.   He had moved his corn on the place ready to take possession when Williams gathered his crop, but did not get possession until after Henderson bought.

"7.  Henderson could not get possession of the houses and cultivated land, because it was rented to Matthews.   He rented land in 1888 and 1889 from his mother, about a mile from the place he had bought, and lived there farming until he could get possession of the place he had bought.   As soon as he bought he took possession of the six acres and of the meadow and pasture.   There were two houses on the place, one across the road from the six acres tract.   ·He dug a well there in 1887 and broke up and fenced the six acres tract.   He cultivated this six acres in 1888 and 1889, and built a barn at the residence opposite the six acres tract, and built an addition to the house in 1888.   He bought twenty acres of timber land to support the place in 1887, after he bought from Crowder.   He used the hay meadow in 1888 and 1889, and pastured his work stock and cattle in the pasture both years. Matthews also pastured his work stock in the pasture, with Henderson's consent.   In the fall of 1889, after the sale, Henderson moved with his family into the residence he had improved, and has lived there cultivating the farm ever since.   He has never owned any other land since Crowder sold to him, except the 136 acres Crowder conveyed to him, and the twenty acres of timber, and has claimed the 156 acres as his homestead ever since he bought it.

"8.  Neither the six acres tract nor the timber was levied on, but the entire 130 acres tract was levied on and sold.

"9.  At the time of the sale Henderson gave notice that he claimed the land as his homestead, and plaintiffs had notice of such claim."

1.  Appellants' second assignment of error, and first presented in their brief, is, that "the court erred in admitting the testimony of the defendant, J. G. Henderson, that when he purchased the land in controversy from T. S. Crowder it had been leased by Crowder to Matthews for the years 1888 and 1889, as it was shown that said lease was in writ-

ing, and was not produced or accounted for, as shown by plaintiffs' bill of exceptions number 2."

The court below, in the bill of exceptions number 2 referred to in this assignment, makes the following explanation: "Henderson testified first, that when he traded for the land Matthews had it rented for two years, and he, witness, got the rent notes in his trade, but could not get possession until Matthews' contract expired, in 1889. Plaintiffs' counsel objected to this evidence of a rent contract, because it appeared to be a contract for more than one year, and should be in writing, which was overruled. It was then developed, during the further examination of the witness, that there was a written lease, which had been delivered to him with the notes. Plaintiffs' counsel then objected to proof concerning the lease, for the reason set out in the bill; but no motion to exclude previous evidence was made. Defendant's counsel then endeavored to lay a predicate for parol proof of the contents of the lease, failed, and insisted upon making such proof, because the lease was merely incidentally in issue. I informed the attorneys I would reserve my ruling; that I thought proof of the contents of the lease was not admissible, but would reserve my ruling, and they could proceed. The witness then testified as stated in the bill, with the exception he did not testify that the lease reserved the hay and pasture land, or what the amount of the note was. He testified, that when he bought, Crowder delivered possession of the hay and pasture land and the six acres of prairie to him, and he had possession in 1888 and 1889, and used it as shown in findings of facts. After the defense closed, plaintiffs put Crowder on the witness stand, and he testified that the notes were for $300 each, and that he reserved the use of the hay and pasture land when he leased the farm to Matthews; but it was not proved by any one that such reservation was in the lease. I do not remember whether this was in direct or cross-examination. When the evidence closed, I announced that I would sustain the plaintiffs' objections to proof of the contents of the lease, and would not consider any such evidence in coming to a decision, but would consider the fact that the cultivated land was rented to Matthews for 1888 and 1889 by Crowder, before Henderson bought, as a fact in evidence. Afterwards, before the decision was announced, defendant made a motion to reopen the case so he could prove the loss of the lease—the knowledge having come to him since the evidence closed, to enable the court to consider proof of the terms of the lease—which was resisted by plaintiffs, and overruled by the court, because plaintiffs' witness had gone home. I refused to consider, in deciding the case, any evidence of the contents or terms of the lease; but did consider, as contended, the fact that Crowder had rented the land in cultivation to Matthews for 1888 and 1889, and had taken notes therefor, which were turned over to Henderson when he bought, and afterward paid by Matthews, and presumably delivered to him. I think such evidence as was considered, admissible.

It established the fact that the land was rented. How, or upon what terms, was immaterial." * * *

This assignment of error can not be sustained, for the following reasons: (1) The court below did not consider the contents of the lease, as shown by the bill of exceptions. (2) Even if it should be conceded that it was error to admit the testimony of J. G. Henderson, objected to in this assignment, it would be harmless, for the reason that almost the identical facts were proved by the witness Crowder, and were not objected to or controverted. (3) The case was tried before the court, without a jury, and even if the whole of the testimony objected to should be excluded, it was amply proved by the other testimony that the land in controversy was the homestead of appellee and his family at the time of the levy and sale, and that the purchaser at the sale had full notice of that fact.

2. The third assignment complains that the court in its findings of fact considered the evidence, that when the land in controversy was bought by appellee from Crowder, the same had been rented to Matthews for the years 1888 and 1889, when appellee had alleged in his answer and plea of homestead, that at the time of its purchase his vendor had rented it for one year.

There was no objection to the evidence on this ground; and the objection is made for the first time in this court.

In the pleading of appellee, after alleging all the material facts showing that the land in controversy was his homestead at the time of the levy and sale, he sets out as a reason why he was not in the actual use and occupation of the whole tract, that his vendor, prior to the sale, had rented out to Matthews a portion of the land, and that the said tenant was in possession of a part. But it was shown that the designation of the homestead was complete. Appellee exchanged his original homestead for a tract of land in controversy for the express purpose of making this tract his home, and it was so understood by all parties to the trade. The portion not in use by the tenant was actually occupied and used by appellee, and improved for the purpose of a home. The rent notes were transferred to appellee, and the tenant had attorned to him as his landlord, and he had actually been so far admitted into possession and recognized by the tenant as to build an addition to the main residence occupied by the tenant, preparatory to the future occupancy of the place as a home.

We admit the full force of the doctrine contended for by the appellants, that the allegations and proof should correspond, but an objection to conclusions of fact by the court below made for the first time in this court, upon a minor point, when such conclusions are fully supported by the evidence upon the main issue, can not be sustained. Had the land been designated as a homestead? This is the main question.

Under the facts showing that appellee's original homestead was exchanged for this, with the express purpose and intention of making it

his homestead, if the appellee within a reasonable time, designated it as his home by such acts as indicated his purpose, and afterward moved upon the place and made his home thereon, it is exempt.  Watkins v. Davis, 61 Texas, 415; Schneider v. Bray, 59 Texas, 668; 40 Wis., 347.  He did immediately after the sale take possession of six acres of the tract on which he dug a well, and which he fenced and placed in cultivation.  He also occupied and used the pasture and meadow, and had made an addition to the main residence, built a barn, and bought a tract of timber land to be used with the homestead.  He did not move into the house with his family, because it was occupied by another. Whether that other person was a tenant or trespasser, and whether he held it for one year, or two or three, would not matter, if the appellee had designated the place as his home, was in actual use and occupancy of a part of it, and intended to move into the residence with his family just as soon as he could get possession of the house; and gave actual notice to the purchaser at the sale of his homestead claim, and actually did move into the house with his family and occupied it as a residence as soon as he could obtain possession.  Wagon Co. v. Kennedy, 75 Texas, 212; Reinstein v. Daniels, 75 Texas, 640.

3.  The fourth assignment is as follows:  "The court erred in considering the evidence, that when the defendant purchased the land in controversy from Crowder the latter had rented it out for the two coming years to Matthews, as without evidence of a written contract signed by Crowder such evidence would be immaterial."

The testimony of J. G. Henderson was objected to upon this point, as shown in the second assignment above; but the other testimony, showing that Crowder had rented a part of the property to Matthews for 1888 and 1889, and had taken his notes therefor, and transferred them to appellee, and when Matthews went into possession of such part, if objected to by appellants, such objection is not shown in the record. The material point was, that Matthews was in possession of the house, and that appellee got into it as soon as he could.  It was not error to consider this testimony; certainly not, when there was no objection made to it.

4.  The fifth assignment of error is as follows:  "The court erred in his conclusion of law that the purchase by the defendant of the land in controversy on September 27, 1887, it then being under lease, having two years and three months unexpired term, with intent to make it his homestead when the lease should expire, with acts of ordinary improvement thereon by defendant, constituted the land the homestead of the defendant, neither the defendant nor any member of his family ever having resided upon the land."

If the contention of appellants in this assignment is correct, then no act of dedication of a homestead short of actual residence upon the property, with the family, would be sufficient; and it would always be a race for pedal possession between the sheriff and the head of the family.  Such is neither the letter nor spirit of our homestead law,

which should be fairly and reasonably construed with the view of carrying out the wise purpose of the fathers of the Constitution. It is clear that the justice of the case has been reached, and that from the testimony no other result could have been attained.

The judgment is affirmed.

*Affirmed.*

Delivered January 9, 1895.