GULF, C. & S. F. RY. CO. v. CULWELL.
(No. 6084.)

(Court of Civil Appeals of Texas. Austin. April 30, 1919. On Appellant's Motion for Rehearing June 18, 1919. On Appellee's Motion for Rehearing Oct. 15, 1919. On Appellant's Second Motion for Rehearing Dec. 17, 1919.)

1. CARRIERS ⬦228(5) — EVIDENCE INSUFFICIENT TO SHOW NEGLIGENT VENTILATION OF STOCK CAR.

Evidence *held* insufficient to show that defendant railroad was negligent in failing properly to ventilate the box car in which plaintiff's horses were shipped because it failed to nail strips across the open north door of the car through which the horses were loaded, but instead shut the door.

2. CARRIERS ⬦215(2)—CARRIER LIABLE FOR INJURY TO LIVE STOCK IN DEFECTIVE PENS.

A railroad company is under duty to exercise ordinary care to provide suitable pens for loading and unloading live stock; and where horses to be shipped were• overheated in a "cutting out" process made necessary by the railroad's negligence in permitting water troughs to overflow, rendering the pen muddy, such road was liable for consequent injuries to the horses in transit.

On Appellant's Motion for Rehearing.

3. APPEAL AND ERROR ⬦1177(8)—JUDGMENT REVERSED WHERE FINDING WAS GENERAL AND ONE ISSUE ERRONEOUSLY SUBMITTED.

In action for injuries to horses in transit, where two issues of negligence were submitted to jury, one allowing recovery for an improper element of damage, and jury found for plaintiff on both, and in response to another special issue awarded lump sum as damages, there must be a reversal and a new trial.

On Appellee's Motion for Rehearing.

4. CARRIERS ⬦215(1) — LIABILITY FOR INJURY TO STOCK FROM CONCURRING CAUSES.

Where injury to live stock is produced by negligence of the carrier concurring with another cause from which it is exempt from liability by law, as the act of God, or by contract, and there is no negligence on the part of the shipper. contributing to such injury, the carrier is liable in damages for its full amount.

On Appellant's Second Motion for Rehearing.

5. CARRIERS ⬦215(1) — APPORTIONMENT OF DAMAGE WHEN INJURY IS PARTLY ATTRIBUTABLE TO CARRIER.

If part of the injury to a shipment of horses arose solely from the shipment being in a box car, and part solely from the condition of the shipping pens, the risk from the use of a box car being assumed by the shipper, while the improper condition of the pens was negligence of the railroad for which it was liable, the damage from each cause should be apportioned, and the shipper given recovery only

for the part caused by the condition of the pens.

Appeal from District Court, Tom Green County; C. E. Debois, Judge.

Action by C. C. Culwell against the Gulf, Colorado & Santa Fé Railway Company. From judgment for plaintiff, defendant appeals. Affirmed.

Terry, Cavin & Mills, of Galveston, Joseph Spence, Jr., of San Angelo, and Lee, Lomax & Smith, of Ft. Worth, for appellant.

Blanks, Collins & Jackson,. of San Angelo, for appellee.

Findings of Fact.

JENKINS, J. The appellee, being desirous of shipping some horses from San Angelo to Brownwood, applied to appellant's agent at San Angelo for cars in which to ship the same. On account of pressure of business created by war conditions, appellant was unable to furnish appellee a stock car, and so informed appellee. Appellee entered into an oral agreement with the agent of appellant that, if he would furnish box cars in which to ship his horses, he would assume all risk of damage from the use of such cars; and, when the horses were loaded, and before the shipment started, appellee signed the following written statement, indorsed on the contract ·of shipment:

"Shipper assumes all risk of damage likely to occur caused by loading in box car."

Upon arrival at Brownwood, some of the horses were found to be dead, occasioned by suffocation and overheating. The jury found the damage as thus occasioned to be $500, and the evidence supports such finding. The horses were very hot when loaded into the car. Had they not been overheated, they would not have been injured on account of lack of ventilation of the box car in which they were shipped, as is shown by the fact that other horses, not overheated, shipped in the same train in the same kind of cars, with the same kind of ventilation, were not injured.

The cars were ventilated on the south side by strips being nailed across the door, but the north door was practically closed. Had the north door been left open, and strips nailed across same, the horses would not have been injured, notwithstanding the fact that they were overheated when they were loaded.

The overheating of appellee's horses before shipment was occasioned by cutting or separating the colts from the mares in muddy pens, by reason of which the cutting could not be done in the usual way, that is, on foot, but had to be done on horseback. Had the pens not been muddy, the mares and colts could have been separated without overheat-

ing them, and no damage would have occurred by reason of using a box car for their shipment.

In shipping mares and colts, it is customary to separate them in the shipping pens, and ship them in separate cars, as was done with appellee's mares and colts. This is necessary to protect the colts from being injured by being trampled upon by the grown stock.

### Opinion.

Appellee alleged negligence upon two grounds: One in failing to properly ventilate the car in which the injured horses were shipped; and the other in not furnishing suitable pens for loading said horses.

[1] We do not think that the first ground is sustained by the evidence. The south door of the car was ventilated by nailing strips across it from the inside before the horses were put in the car. The horses were loaded through the north door. It is shown by the testimony that strips could not have been nailed across this door from the inside after the horses were loaded, as the car was full of untamed horses. If strips had been nailed across from the outside, the weight of the horses would have pushed them off, and the horses would have fallen out. Appellee testified that an open barred gate could have been made and fastened in the north door with cleats, and thus have ventilated the car so that no injury would have occurred. Granting this to be true, the appellant did not expressly contract to thus ventilate the car, nor do we think it did so impliedly. Four or five other box cars were loaded in the same manner, and shipped in the same train. Appellee was present and saw how they were loaded, and made no objection to his horses being loaded and shipped in this way. He left the pen after his horses were in the car, but before the north door was closed. He had seen that the north door of the other cars had been closed, and had no reason to presume that the same would not be done as to the car which contained his horses. We think that, when he assumed "all risk of damage likely to occur caused by loading in a box car," he assumed the risk arising from the car being in the condition that it was as to ventilation.

[2] But, notwithstanding the lack of ventilation, appellee's horses would not have been injured but for their overheated condition when they were placed in the car, and they would not have been overheated but for the muddy condition of the pens. This condition was caused by appellant negligently permitting the water troughs to overflow, by reason of the hydrant being left open.

This case was submitted on special issues, the first of which was as follows:

"Did plaintiff's horses sustain any damage as a direct result of any failure on the part of defendant, its agents, or employés, to exercise ordinary care to provide suitable pens for the separating and loading of said horses? Answer yes or no." To which the jury answered, "Yes."

It is the duty of railway companies to exercise ordinary care to provide suitable pens for loading and unloading stock. Railway Co. v. McRae, 82 Tex. 614, 18 S. W. 672, 27 Am. St. Rep. 926; Railway Co. v. Mitchel, 85 S. W. 286; Railway Co. v. Trawick, 80 Tex. 270, 15 S. W. 568, 18 S. W. 948; Railway Co. v. Crenshaw, 59 Tex. Civ. App. 238, 126 S. W. 602.

For the reason that appellant negligently failed to provide suitable pens for loading appellee's horses, as the result of which they were injured in the amount adjudged in the court below, the judgment of the trial court herein is affirmed.

Affirmed.

### On Appellant's Motion for Rehearing.

[3] We have concluded that we were in error in sustaining the judgment of the trial court herein, which was for $500 damages for appellee. This judgment was based on the answers of the jury to the following special issues:

"Special issue No. 1: Did plaintiff's horses sustain any damages as a direct and proximate result of any failure on the part of defendant, its agents or employés, to exercise ordinary care to provide suitable pens for the separating and loading of said horses?" To which the jury answered: "Yes."

"Special issue No. 2: Did the plaintiff's horses sustain any damage as the direct and proximate result (as said term is herein defined) of any failure on the part of defendant, its agents or employés, to exercise ordinary care (as herein defined) to properly ventilate the box car in which plaintiff's horses were being transported?" To which the jury answered: "Yes."

"Special issue No. 3: If you have answered either or both of the foregoing special issues in the affirmative, then state how much in dollars and cents said horses were damaged as the result of such failure on the part of defendant, its agents or employés." To which the jury answered: "$500.00."

It cannot be told from these answers how much, if any, damages were awarded for the failure as to each matter submitted. As we have held that the plaintiff was not entitled to recover as to the matter submitted in special issue No. 2, it becomes necessary, in order for appellee to recover in this suit, to show how much, if any, he was damaged by reason of the failure of appellant as to the matter set out in special issue No. 1.

For the reasons stated, appellant's motion for rehearing is granted, and our former judgment herein is set aside, and this case is reversed and remanded for a new trial.

Motion granted.

Case reversed and remanded.

## On Appellee's Motion for Rehearing.

At the time we granted appellant's motion for a rehearing herein, our attention had not been called to a proposition of law which we have concluded is controlling in this case, and requires the affirmance of the judgment of the trial court. That proposition is as follows:

[4] Where injury is produced by negligence of the carrier concurring with another cause from which it is exempt from liability, by law, as the act of God, or by contract, and there is no negligence on the part of the shipper contributing to such injury, the carrier is liable in damages for the full amount of such injury.

The proposition is thus stated in C. J. vol. 10, p. 188:

"The excepted cause of liability must be the sole cause of the loss, for if the negligence of the carrier mingles with it as an active and cooperating cause the carrier will be responsible."

See, also, same volume, p. 125, and 6 Cyc. p. 525.

The decisions in this state support this view of the law. Ryan v. Railway Co., 65 Tex. 13, 57 Am. Rep. 589; Railway Co. v. Bland, 34 S. W. 675; Railway Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395; Railway Co. v. Brass, 175 S. W. 780; Railway Co. v. Nation, 92 S. W. 827; Fentiman v. Railway Co., 44 Tex. Civ. App. 455, 98 S. W. 939; Bonnor v. Wingate, 78 Tex. 337, 14 S. W. 790; Railway Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785.

For the reason stated, appellee's motion for a rehearing is granted; our judgment reversing and remanding this cause is set aside, and the judgment of the trial court is affirmed.

Motion granted.

Judgment affirmed.

## On Appellant's Second Motion for Rehearing.

[5] Appellant insists that our decision on first [appellee's] motion for rehearing is erroneous, in that it appears from the verdict of the jury that some of the injury to the horses was occasioned by their being shipped in a box car, and that, therefore, the damage should be apportioned. This would be correct, if a part of the injury arose solely from the shipment being in a box car, and a part solely from the condition of the pens. Such, however, is not the fact in the instant case. No injury would have occurred by reason of the shipment being made in a box car, but for the heated condition of the horses when loaded. This condition would not have existed but for the condition of the pens.

It is true that appellee assumed the risk arising from the use of a box car, but this was, as a matter of law, predicated upon the supposition that appellant would not be guilty of some act of negligence, which would cause the use of a box car to injure the horses, without which no injury would have occurred.

Motion overruled.

Overruled.