## ST. LOUIS SOUTHWESTERN RY. CO. OF TEXAS v. CULBERSON.   (No. 6530.)

(Court of Civil Appeals of Texas.   Austin. Jan. 10, 1923.   Rehearing Denied Feb. 14, 1923.)

**1. Carriers ⌖229(4)—Not liable for station agent's failure to notify train dispatcher of possibility of special damage from contemplated shipment.**

A carrier is not liable for a station agent's failure to give notice to a train dispatcher in the employ of the same company of some special damage that might arise from a contemplated shipment of cattle, that being beyond the scope of his duties.

**2. Appeal and error ⌖1042(4), 1056(5) — Failure to strike improper allegations and exclude testimony thereunder held not reversible error.**

In the trial of a case before a judge without a jury, failure to strike improper matters from the pleadings and exclude testimony introduced thereunder is not ground for reversal, where the finding of facts indicates that the court was not influenced thereby.

**3. Carriers ⌖229(4)—Notice to station agent that cattle delayed in transit had been dipped in arsenical solution held notice to carrier.**

Notice to a carrier's station agent, whose duty it is to unload and care for cattle delayed in transit, that they had been dipped in an arsenical solution as required by the tick eradication law and would likely be injured if not properly sheltered and cared for, was notice to the carrier, though the cattle were not at his station, but at a nearby station, with which he had been twice in connection by wire or phone on the day they were unloaded.

**4. Carriers ⌖229(4)—Evidence ⌖13—Carrier charged with notice of dipping of cattle shipped, and effect thereof; common knowledge of effect of exposing cattle to heat immediately after dipping.**

In view of the tick eradication law, requiring both the shipper and carrier of livestock, under a threat of penal prosecution, to dip all stock transported in an arsenical solution, notice by the shipper to the carrier that cattle delayed in transit had been dipped in such solution immediately before shipment and would likely be injured if not properly sheltered and cared for is unnecessary to render the carrier liable for injuries resulting from failure to properly shelter, feed, and water them, for the law requires the carrier to have notice of the dipping, while, as a carrier, it is charged with notice of the effect thereof, it being a matter of common knowledge that injury will result from exposure of cattle to heat immediately after such dipping.

**5. Carriers ⌖215(1)—Carrier held liable for full amount of negligent injury to cattle, though concurring cause was act of God or contract limited liability.**

In absence of contributory negligence, a carrier is liable for the full amount of injury caused by failure to properly shelter and care for dipped cattle delayed in transit, though the concurring cause was an act of God, or liability was limited by contract.

Appeal from District Court, Coryell County; J. R. McClellan, Judge.

Action by Dave H. Culberson against the St. Louis Southwestern Railway Company of Texas. There was a judgment for plaintiff, and, from an order overruling a motion for new trial, defendant appeals. Affirmed.

S. P. Ross, of Waco, for appellant.
T. R. Mears, of Gatesville, for appellee.

BLAIR, J.   This suit was instituted by Dave H. Culberson against the St. Louis Southwestern Railway Company of Texas, to recover damages, alleged to have resulted to appellee's 132 head of cattle through the alleged negligence of appellant while transporting same over its line of railway from Fort Worth, Tex., to Oglesby and Gatesville, Tex. Some of said cattle were killed in transit, others died shortly after arrival because of alleged injuries sustained during ship-

ment, and all were alleged to have been injured by the negligence of appellant, by reason of being kept in open pens and exposed to the sun for a considerable period of time shortly after their being dipped in an arsenical solution, as required by law, before shipment; and further because of the failure of the company to properly feed and water said cattle while they were in its pens at McGregor, Tex.

The defendant answered by general demurrer and special exceptions, which were overruled by the court; and it further denied its liability of any negligence complained of.

The case was tried before the court without a jury, and the judge, upon the request of appellant, filed his finding of facts and conclusions of law, and based thereon his judgment for appellee for the sum of $785, and costs of suit. Appellant filed its motion for new trial, which was overruled by the court, and it appeals. There being no objection by either party to the finding of facts by the trial judge, we adopt the same as our own. They are as follows:

"Be it remembered that, at the conclusion of the trial of the above-numbered cause, counsel representing the defendant requested the court to make his findings of facts and conclusions of law and file same in this cause, and in compliance with said request I make and file the following as my findings of facts and conclusions of law in this case:

"I find as a matter of fact: That the plaintiff in this case, Dave H. Culberson, on or about the 24th day of May, 1920, purchased the cattle in question here in Fort Worth, Tex. That at the date of their purchase that said cattle were in good condition. That said cattle were dipped twice in an arsenic solution as prescribed by law previous to the time that they were delivered to the Santa Fé Railway Company for shipment. That said dippings were seven days apart, and that, during said time, said cattle were properly handled, properly cared for, and properly fed and watered; and that the cattle in question were delivered to the Santa Fé Railway Company on May 28, 1920, in good condition. That said cattle were delivered to the Santa Fé Railway Company about 8 o'clock p. m. in good condition. That said cattle left Fort Worth at about 12:45 a. m. May 29, 1920. That said shipment of cattle were pulled to Cleburne, Tex., and there left until 8:30 a. m. Said cattle arrived at Cleburne at 2:30 a. m. That said cattle were handled from Cleburne to McGregor on a local train, arriving at McGregor at 4:45 p. m. on May 29, 1920, and left Cleburne at 8:30 a. m. on same day.

"I further find that, when said cattle were delivered to the Santa Fé for shipment at Fort Worth, the Santa Fé at Fort Worth notified the Cotton Belt Railway Company at McGregor that said cattle were in transit and would be there in time for the freight going toward Oglesby and Gatesville on May 29, 1920.

"I further find that, after said shipment of cattle had been switched off at Cleburne by the Santa Fé Railway Company, that the Santa Fé notified the Cotton Belt Railway Company at McGregor that said shipment of cattle were being handled from Cleburne to McGregor, Tex., by a local and would not arrive there until 4:45 p. m. May 29, 1920.

"I further find that said cattle did in fact arrive at McGregor, Tex., at 4:45 p. m. May 29, 1920, and were unloaded in the Cotton Belt stock pen about 6 o'clock same day.

"I further find that the stock pens that said cattle were unloaded in at McGregor were open pens, without shelter and shade, and that the water trough in said stock pen was in or near the corner of the pen, and was in a bad, leaky condition and that said water trough in the stock pens at McGregor, Tex., was in such condition that said cattle were not properly watered, and that the cattle were fed at McGregor by an employee of the Cotton Belt Railway Company 800 pounds of shucks Saturday evening and 800 pounds of shucks Sunday evening, together with a couple bales of hay; and I find as a matter of fact that said cattle were not properly fed nor watered nor sheltered, nor cared for at McGregor, Tex., after being received by the Cotton Belt.

"I further find as a matter of fact that said cattle were not properly handled by the Santa Fé Railway Company in receiving said cattle on their cars at 6 o'clock p. m. at Fort Worth, Tex., and holding said cattle until 12:45 a. m. May 29, 1920, and in leaving and switching said cattle off at Cleburne, Tex., and in handling them in a local train to McGregor, Tex.

"I further find that the Santa Fé Railway Company was negligent in its handling of said cattle in receiving the same at 6 o'clock May 28, 1920, and keeping same standing in the stock cars until 12:45 a. m. May 29, 1920, and in starting the shipment of said cattle on a fast train out of Fort Worth that passed through in time for said cattle to have been delivered to the Cotton Belt previous to the time that its freight train passed through McGregor, going toward Oglesby and Gatesville, Tex., and were negligent in failing to deliver said cattle with the train that they left Fort Worth attached to, and were negligent in starting said cattle on said train and switching them off at Cleburne, Tex., to be picked up and handled by a local train, and that, at the time said cattle were delivered to the Cotton Belt Railway Company at McGregor, a portion of said cattle were then injured.

"I further find that the St. Louis Southwestern Railway Company was negligent in placing said cattle in their open exposed pens after they had been notified by the plaintiff through their agent, J. R. Curtis at Gatesville, that said cattle had been previously dipped twice and would likely be injured if not properly sheltered and cared for, and that the St. Louis Southwestern Railway Company of Texas was negligent in failing to water and properly feed said cattle and properly shelter and care for same while in their possession.

"I further find as a matter of fact that, at the time the St. Louis Southwestern Railway Company of Texas loaded said cattle on their train to be shipped to Oglesby and Gatesville on May 31, 1920, that said cattle were in a damaged and injured condition; that some of said cattle had to be dragged on the train when they were

loaded; that the remaining part of said cattle were in a drawn, sick, and in an emaciated condition; that at the time said cattle were delivered to the plaintiff two of said cattle were dead; that one of said steers was of the value of $40 and the other of the value of $70, and that one of said head of cattle was so badly injured that it shortly thereafter died; that the remaining portion of said cattle were injured by being drawn, gaunt, and starved by reason of the matters above found, and that said acts amounted to negligence on the part of the carriers, and the negligence was the approximate cause of said injuries, and that the plaintiff suffered damages in the amount of $785."

Appellant, by its first, second, and third assignments of error, complains of the action of the trial court in overruling its general demurrer and special exceptions Nos. 1 and 2 to appellee's petition. The exact matter complained of, as shown by appellant's statement and remarks under its first and second propositions of law, were as follows:

"The plaintiff's petition alleged: 'That said cattle had been dipped in the solution required by law, previous to being shipped, in the manner and form required by law. That after the cattle had been dipped in said solution in the manner dipped that to expose the cattle immediately thereafter to the hot sun without being sheltered, without having the proper care taken of them in the way of feed and water, is very injurious and damaging to said cattle or stock; and that this plaintiff notified the defendant through its agent, J. R. Curtis, that said cattle had been dipped as herein pleaded, and that they were on the way from Fort Worth to McGregor, Tex., and to bring the same on the day they arrived at McGregor, Tex. That he offered to pay additional charge and expense for so doing, telling the agent of the defendant of the great danger of said cattle being damaged if held in McGregor until arrival of said cattle, as hereinabove alleged, and to bring them through the day they arrived in McGregor.'"

The court should have sustained the exception to at least a portion of the matters complained of in said assignment of error. Whether his failure to do so is of sufficient merit to warrant a reversal of the case must be determined, however, from the whole record; that is, the case having been tried before the judge without a jury, we must inquire into what effect that portion of the petition complained of and the evidence erroneously admitted thereunder had upon the judgment rendered herein. The portion which should have been stricken out of appellee's petition is as follows:

"That they were on the way from Fort Worth to McGregor, Tex., and to bring the same on the day they arrived at McGregor, Tex.; that he offered to pay additional charge and expense for so doing, telling the agent of the defendant of the great danger of said cattle being damaged if held in McGregor until arrival of said cattle, as hereinabove alleged, and to

248 S.W.—8

bring them through the day that they arrived in McGregor."

[1, 2] However, we find from an examination of the finding of facts by the trial judge that he did not predicate his judgment upon the above allegation, nor upon the testimony introduced thereunder. The rule announced in M., K & T. Ry. Co. v. Belcher, 88 Tex. 549, 32 S. W. 518, that a carrier should not be held liable for failure of a station agent to give notice to another employé of the same railway company, charged with the duty of dispatching its trains, of some special damage that might arise from a contemplated shipment, as being beyond the scope of his duties to do so, is a correct one. The rule is as well settled, and correctly so, that, in the trial of a case before a judge without a jury, an erroneous ruling and failure to strike from pleadings improper matters, and a failure to exclude testimony introduced thereunder, where the finding of facts indicates that the trial court was not influenced thereby, nor by the evidence erroneously admitted thereunder, the error complained of is not ground for reversal. Authorities: Mullaly v. Noyes (Tex. Civ. App.) 26 S. W. 145; Burgher v. Henderson, 9 Tex. Civ. App. 521, 29 S. W. 522; Nat. Bank of Garland v. Gough (Tex. Civ. App.) 197 S. W. 1119; Int. Ry. Co. v. Reed (Tex. Civ. App.) 203 S. W. 410.

[3] The assignment of error as to the other portion of appellee's petition presents, in our opinion, a different proposition of law from that announced in the M., K. & T. Ry. Co. v. Belcher Case, supra. The other portion of appellee's petition complained of is as follows:

"That said cattle had been dipped in the solution required by law, previous to being shipped, in the manner and form required by law. That after the cattle had been dipped in said solution in the manner dipped, that to expose the cattle immediately thereafter to the hot sun without being sheltered, without having the proper care taken of them, in the way of feed and water, is very injurious and damaging to said cattle or stock; and that this plaintiff notified the defendant, through its agent, J. R. Curtis, that said cattle had been dipped as herein pleaded."

The trial judge, in his finding of facts, shows that he took into consideration in rendering his judgment the testimony introduced under the above allegation in appellee's petition, for we note the following finding thereon:

"I further find that the St. Louis Southwestern Railway Company was negligent in placing said cattle in their open exposed pens, after they had been notified by the plaintiff, through their agent, J. R. Curtis, at Gatesville, that said cattle had been previously dipped twice and would likely be injured if not properly sheltered and cared for."

In this appellee merely pleads the law relative to requiring cattle to be dipped before shipment, as well as the effect upon the cattle of such required dipping in such arsenical solution, being handled improperly, and exposed to the hot sun, and without proper feed and water; and the allegation that appellee so informed J. R. Curtis, agent of appellant, of such danger of injury to said cattle, was giving appellant no further information than it already had, for, since the passage of what is known as the "Tick Eradication Law" in Texas, both the shipper and the carrier of live stock are required, under a threat of penal prosecution, to dip all live stock so transported in a dip of arsenical solution, for the purpose of destroying the fever-carrying tick; and notice to the agent whose duty it is to unload and care for cattle delayed in transit, even though the delayed cattle were not at his station but at another station a short distance away, where it was further shown that the agent had been twice in connection with the other station on that day, either by wire or phone, is notice to appellant, if such notice is required, and is within the scope of the agent's authority, since it was his duty to unload, shelter, and care for cattle which might be delayed in transit, and required by law to be unloaded, fed and watered, because he was employed in a like or similar capacity, and knew the duties of said agent.

[4] We are of the opinion that there is no merit to appellant's assignments above discussed. We do think appellant was not liable, as a matter of law, for failing to hold its train for said shipment of cattle, but we think it liable for failure to properly shelter, feed, and water cattle, delayed, as alleged and proved, and as found by the trial judge to be a fact. Authorities: Andrews v. McGill (Tex. Civ. App.) 179 S. W. 1087. It seems to us that a contention is without reason which would require notice that certain damages would be suffered, if the carrier handling, already knew, or, in the exercise of ordinary care, should have known, that said damages would result as the natural and probable consequence of such act. Appellant cannot rightfully contend that it had no notice of such dipping, as the law requires it to have such notice, and, in the exercise of its occupation as a carrier, it is charged with the notice of the effect of such dipping upon cattle immediately before shipment, as it is a matter of common knowledge that to expose cattle to heat immediately after dipping in a dip of arsenical solution that injury will result.

[5] We are of the opinion that appellant would be liable for the injuries to appellee's cattle under the rule of law announced in numerous cases in this state, where injury is caused by the negligence of the carrier concurring with another cause, and there is no negligence on the part of the shipper contributing to such injury, even though it be an act of God, or liability be limited by contract, for the full amount of such injury. C. J. vol. 10, pp. 188 and 125; 6 Cyc. p. 525; Ryan v. Ry. Co., 65 Tex. 13, 57 Am. Rep. 589; Ry. Co. v. Bland (Tex. Civ. App.) 34 S. W. 675; Ry. Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395; Ry. Co. v. Brass (Tex. Civ. App.) 175 S. W. 780; Ry. Co. v. Nation (Tex. Civ. App.) 92 S W. 827; Fentiman v. Ry. Co., 44 Tex. Civ. App. 455, 98 S. W. 939; Bonner v. Wingate, 78 Tex. 337, 14 S. W. 790; Ry. Co. v. China Mfg. Co., 79 Tex. 26, 14 S. W. 785; also this rule is clearly established by this court in Gulf, C. & S. F. R. Co. v. Culwell (Tex. Civ. App.) 216 S. W. 457.

Appellant's fourth assignment of error complains of the admission of evidence under the erroneous allegations complained of in its three preceding assignments of error, and, having already disposed of the same under our discussion of said assignments, we do not deem it necessary to reiterate them here. Andrews v. McGill (Tex. Civ. App.) 179 S. W. 1087.

For the reasons indicated, the judgment is affirmed.

Affirmed.

## On Motion for Rehearing.

There being no new matters presented in the motion of appellant for a new hearing, and being of the opinion that we correctly decided the law in our opinion in this case, the motion is overruled.

Motion overruled.