CHARLES F. ILFREY v. SABINE & EAST TEXAS RAILWAY COMPANY.

No. 2807.

1. **Expert Testimony—Waves.**—A witness aged sixty-five years, whose principal occupation had been that of a sailor, and who was acquainted with the locality, was properly allowed to answer the question, "With a wind sixty miles an hour, what would have been the size of the waves in that immediate vicinity?" the testimony being pertinent.

2. **Same.**—Nor was the expert opinion as to height of the waves improper, although other witnesses testified to the height of the waves at the time and place from actual observation.

3. **Proximate Cause.** — Where there was testimony tending to show that the house for whose destruction the suit was instituted would have been destroyed in the storm at the time, regardless of the effect of the railway embankment by which the depth of the water was increased, and the court found that the injury was caused by the storm, the finding will not be set aside.

APPEAL from Jefferson.    Tried below before Hon. J. M. Maxwell, Special District Judge.

The opinion contains a statement.

*Tom J. Russell,* for appellant. — 1. The court erred in admitting the testimony of the witness King, giving his opinion as to the height the waves would be in a storm with given velocity of the wind. [See facts in opinion.]    Cooper v. The State, 23 Texas, 331; Haynie v. Baylor, 18 Texas, 498.

2. Where there have been storms or overflows of equal or greater violence and extent at the place previous to the one at which the injury complained of was inflicted, then the defendant becomes liable for not making sufficient provision in the construction of its road bed, culverts, and waterways for the free flowage of water that may come without doing injury to property.    Railway v. Holliday, 65 Texas, 512; Railway v. Pomeroy, 67 Texas, 498; Railway v. Hadnot, 67 Texas, 503; Railway v. Helsley, 62 Texas, 593; Railway v. Brousard, 69 Texas, 617; Railway v. Johnson, 65 Texas, 389; Railway v. Wood, 69 Texas, 679; Rev. Stats., art. 4171.

*O'Brien & O'Brien,* for appellee. — 1. The court did not err in the admission of the testimony of Louis King, as set out in plaintiff's bill of exceptions, or as admitted.

2. The admission of illegal evidence when the case is tried by the court is no ground for reversal if there is competent evidence to support the judgment.    Baker v. Westcott, 73 Texas, 129; Lindsay v. Jaffray, 55 Texas, 626; Clayton v. McKinnon, 54 Texas, 206; Dignan v. Shields, 51 Texas, 322; Beaty v. Whitaker, 23 Texas, 527; Smith v. Hughes, 23 Texas, 248; Melton v. Coff, 21 Texas, 539.

3.   The several conclusions of fact of the judge below being well supported by evidence, and his judgment applying the law to his finding of the facts appearing to be correct, the judgment of the court below should not be disturbed.   Gilliard v. Chesney, 13 Texas, 337; Jordan v. Brophy, 41 Texas, 283; Mathis v. Oberthier, 50 Texas, 329; Flanagan v. Oberthier, 50 Texas, 382; Tarkinton v. Brousard, 51 Texas, 550.

GAINES, ASSOCIATE JUSTICE.—During the storm and flood which occurred at Sabine Pass on the 14th day of June, 1886, a house belonging to Charles F. Ilfrey was washed away and destroyed.   He brought this suit to recover of appellee damages for the destruction of the property, alleging that it was caused by the negligent construction of the embankment upon which the railroad track was laid.   The house was situated in the town of Sabine Pass, fronting on and very near to the body of water of the same name.   The company's track lay west of the town, and was built upon an embankment about four feet in height.   At the time of the storm the waters were driven up from the gulf and overflowed the town.   There was a strong wind blowing from the east.   The country west of the town is level for many miles in extent, and has no natural obstacle to prevent an uninterrupted flow of water over it.   Appellant claims that the water which was driven by the storm over the town was retained by the railroad embankment, and prevented from flowing over the level country west of it as it would otherwise have done, and that in consequence the height of the flood was increased and the house thereby destroyed.   Ilfrey having died, his wife, who married again, joined by her second husband, made herself a party to the suit in her own right and as guardian of Ilfrey's minor children.   The case was tried without a jury and resulted in a judgment for defendant.

The contention of the defendant in the court below was that the house was destroyed by reason of the wind and waves, and that the embankment did not contribute to the injury.

During the progress of the trial one Louis King, a witness for defendant, after having testified that the wind on the morning of June 14 was blowing at the rate of sixty miles per hour, was asked the question, "With a wind like that, what would have been the size of the waves in that immediate vicinity?"   The question was objected to on the grounds that the witness had not shown that he was an expert, and that expert testimony could not be resorted to to prove the size of the waves when it appeared that other witnesses were present at the scene of the disaster at and about the time the house was destroyed.   The court overruled the objection and the witness answered the question.   In this ruling there was no error.   The witness had testified that he went to sea when he was fourteen years of age and had continued a sailor for eleven years; that subsequently he had run a steamboat at Sabine Pass, and at the time of

the storm was living two miles distant.    He was sixty-five years of age, and according to his own testimony the occupation of a sailor, with short intervals, had been the business of his life.    His knowledge of the immediate locality and of the force of the wind, and his experience upon the water, qualified him to give an opinion.    The fact that other witnesses were enabled to testify from their own knowledge as to the height of the waves did not render his opinion incompetent.    Lawson on Exp. Ev., 36, 37, citing Thornton v. Royal Ex. Ass. Co., Peake, 96.

The other assignments of error relate to the conclusions of the court. The court's findings of fact are as follows: "1. That overflows from freshets and high tides had happened at Sabine Pass many times since 1871, but no storm or cyclone with wind blowing at the rate of sixty miles per hour had occurred there until the storm and cyclone which occurred there on the 14th of June, 1886, almost destroying the town.    2. The court concludes from the preponderance of evidence that defendant's railroad embankment was not the proximate and immediate cause of the injury complained of. ' 3. The court concludes from the preponderance of evidence that plaintiff's house would have been washed away had not the railroad track been located where it was.    4. The court concludes from a preponderance of evidence that the storm and cyclone of the 14th of June, 1886, was one of unusual violence, amounting to an act of God, against which no reasonable amount of diligence and skill could have provided."

We quote the findings at large because each paragraph is made the subject of a separate assignment of error.    It is evident, however, that if either the second or third conclusion of fact is sustained by the evidence, it is wholly immaterial whether the others were warranted or not.    The real issue in the case was determined by the third finding adversely to the plaintiff, and if this be sustained by the evidence it is decisive of the case.    If the house would have been washed away in the absence of the railroad embankment, then the embankment was not the proximate cause of the loss, and plaintiff was not entitled to recover.    Upon this, the vital issue, it is doubtful if it can be said that the testimony was conflicting.    It may be that the testimony of different witnesses tended to different results.    The house was doubtless carried away by the combined action of the wind and water.    That it would not have been destroyed even if the height of the water had been less, it is impossible to say from the testimony.    It follows that if the evidence did show that the company's embankment did dam the water and cause it to rise higher than it would have arisen but for the construction, it would still be a question whether the increased depth of water contributed in any manner to the destruction of the house.

We think the court was warranted by the evidence in concluding that it was not proved by a preponderance of evidence that the embankment

caused the loss of the property. The findings of the court are entitled to the same respect as the verdict of a jury, and can not be set aside when there is evidence to support them.

If the loss would have occurred although the embankment had never been constructed, the plaintiffs were not entitled to recover.

The judgment is therefore affirmed.            ·

*Affirmed.*

Delivered February 7, 1890.