GULF, COLORADO & SANTA FE RY. CO. V. GUSTA BOYCE ET AL.

Decided April 26, 1905.

**1.—Negligence—Act of God—Question for Jury.**

The question as to whether the evidence in regard to an accident shows that it was directly caused by an act of God, is one of fact to be determined by the jury, as also whether the accident would have occurred had it not been for the concurrence of defendant's negligence with the act of God.

**2.—Same—Concurring Negligence.**

Where defendant's negligence concurs with the act of God, and the injury would not have occurred but for such negligence, the defendant is liable.

**3.—Same—Heavy Rainstorm—Washout of Track.**

Where the evidence showed a very hard rain which caused the water to wash over a railroad track it could not be said, as a matter of law, that by the exercise of reasonable care, prudence and diligence the company could not have so constructed its culverts as to have prevented its track there from being rendered unsafe for its trainmen by the rain.

**4.—Same—Contributory Negligence—Sending Man Ahead.**

Where a rule required that in case of extraordinary rains engineers should make careful inquiry and extra stops and send a man ahead to examine bridges, trestles, etc., and a train running slowly was derailed before it came within 100 yards of a bridge reported dangerous, and the night was dark, it was for the jury to say whether the engineer's failure to send a man out was contributory negligence, that is, a failure to exercise such a degree of care as a man of ordinary prudence would have exercised under the same or like circumstances.

**5.—Same—Degree of Care.**

An engineer running a passenger train is, as to the matter of his own

safety, bound to exercise only ordinary care and prudence under the circumstances.

### 6.—Verdict—Amount of Damages—Locomotive Engineer.

Where deceased was a skilled engineer, 45 years old, earning $150 to $200 a month, a verdict awarding to his wife $10,000, to his daughter, 17 years old, $5,500, and to his aged mother, to whose support he contributed $25 per month, $2,000, was not excessive in amount or apportionment.

### 7.—Harmless Error—Admission of Evidence.

The erroneous admission of evidence is harmless error where the same evidence has been admitted without objection or the fact it tends to prove is otherwise conclusively shown.

### 8.—Same—Opinion Where Facts Shown.

A statement by a witness that certain railroad ties were too rotten to be used as such was not prejudicial where the evidence showed that they were rotten through and through and there was no good wood in them.

### 9.—Evidence—Exhibiting Articles in Evidence.

Upon an issue as to negligence on the part of a railroad in having rotten crossties in its track which caused a derailment, pieces of rotten wood identified as parts of the ties in question could be exhibited to the jury.

### 10.—Same—Like Rainstorms.

Evidence of other rains in that section as heavy as the one causing the injury was admissible to show that the storm was such as might have reasonably been anticipated and provided against.

### 11.—Same—Contributory Negligence—Rules—Derailment of Train.

Upon an issue of contributory negligence on the part of an engineer in not stopping his train because of the condition of the track resulting from a heavy rainfall, it was admissible to give in evidence, though not pleaded, a rule of the company in force, requiring section foremen, in case of heavy rainstorms, to at once go over their sections, with danger signals, to ascertain if the track was safe for the passage of trains, etc., there having been no compliance with the rule in this case.

### 12.—Railroads—Negligence in Construction—Culverts for Drainage.

The statute requiring railroads to provide suitable culverts, etc., in their tracks for the necessary drainage as the lay of the land requires (Rev. Stats., art. 4436) is applicable on the question of negligence not only with respect to the overflow of lands, but also in a case of injury resulting from a washout of track through overflow causing the derailment of a train, and a failure on the master's part to furnish the servant a safe place in which to work.

### 13.—Master and Servant—Safe Place to Work—Assumed Risk.

A railroad employe whose place to work is on the road has the right to assume that the company has exercised ordinary care to make it a reasonably safe place for him to do his work, and unless he knows that this duty has not been discharged, and the danger incident to such failure, he does not assume the risk arising therefrom.

Appeal from the District Court of Cooke. Tried below before Hon. D. E. Barrett.

*J. W. Terry* and *A. H. Culwell,* for appellant.—1. In order to entitle recovery on the ground of negligence, the evidence must show not only that the act complained of was negligence, but that such negligence was the proximate cause of the act complained of, and in this case the evidence shows unmistakably that the condition of the ties and

rails in this track could not have been and was not the proximate cause of the accident, which was due to the unprecedented rain and consequent washout. Texas & P. Ry. Co. v. McCoy, 90 Texas, 264; Gulf, C. & S. F. Ry. Co. v. Rowland, 90 Texas, 365; Culpepper v. International & G. N. Ry. Co., 90 Texas, 634; S. P. Co. v. Wellington, 65 S. W. Rep., 219.

2. An employe failing or refusing to observe the rules of his employer made known to him, takes upon himself the risk and consequences of such disobedience, and is guilty of negligence, which defeats his right to hold the master liable for injury to which such negligence contributed; and in this case deceased failed to observe the rules of the company, which rules were known to him, and the violation of such rules proximately contributed to the accident, and he was, therefore, guilty of such negligence as ought to preclude recovery on behalf of appellees herein. Galveston, H. & S. A. Ry. Co. v. Brown, 63 S. W. Rep., 305; San Antonio & A. P. Ry. Co. v. Wallace, 76 Texas, 637; G. W. T. & P. Ry. Co. v. Ryan, 69 Texas, 665; Galveston, H. & S. A. Ry. Co. v. Gormley, 91 Texas, 394; Fritz v. Railway Co., 30 S. W. Rep., 85; Pilkington v. Gulf, C. & S. F. Ry. Co., 70 Texas, 229; Railway Co. v. Kitchens, 9 S. E. Rep., 827; Railway Co. v. Cragg, 80 Fed. Rep., 488; Railway Co. v. Rush, 15 So. Rep., 133; Rittenhouse v. Railway Co., 26 S. E. Rep., 923; Railway Co. v. Smith, 76 Texas, 616; Mason v. Railway Co., 19 S. E. Rep., 362; Westcott v. Railway Co., 153 Mass., 460; Railway Co. v. Reesman, 60 Fed. Rep., 370; Railway Co. v. Mothershead, 20 So. Rep., 69; Slater v. Jewett, 85 N. Y., 61; Bailey Mast. & Serv., 88; Beach on Cont. Neg., sec. 373.

3. The servant, having knowledge of danger about him, must use diligence and care in protecting himself from harm; and in this case the deceased did have knowledge of the danger that was about him, and did not use diligence to protect himself from harm, which failure to use diligence proximately contributed to the accident. Knight v. Cooper, 14 S. E. Rep., 999; Davis v. N. C. & C. Co., 12 S. E. Rep., 539; District of Columbia v. McElligott, 117 U. S., 621; Humphreys v. N. N. & M. V. Co., 10 S. E. Rep., 39.

4. The rule was known to the deceased, and was disobeyed by him, and since, if it had been obeyed there would likely have been no accident, the failure to observe the rule constitutes negligence on the part of the deceased which will and ought to preclude recovery. Texas & N. O. Ry. Co. v. Fields, 74 S. W. Rep., 930; St. Louis S. W. Ry. Co. v. Barrett, 72 S. W. Rep., 884; Matthews v. Missouri, K. & T. Ry. Co., 66 S. W. Rep., 902; Louisville & N. Ry. Co. v. Mounce, 71 S. W. Rep., 518; Elliott v. Chicago, M. & St. P. Ry. Co., 150 U. S., 245; Louisville & N. Ry. Co. v. Woods, 17 So. Rep., 41.

5. It was not sufficient to authorize the introduction of the pieces of timber in evidence for the witness to simply swear that they were railroad ties, such term being too general, but the qualification should have gone further and the party required to show that they were the identical ties in the track which, it is charged, were broken at the time and place of the accident. McGrail v. City of Kalamazoo, 94 Mich., 52, 53 N. W. Rep., 955; Steiner v. Jester, 23 S. W. Rep., 719; Garrity v. Rankin, 55 S. W. Rep., 367; Eborn v. Zimpleman, 47 Texas, 503.

*Potter & Potter* and *Culp & Giddings,* for appellees.—1. Even though the accident might not have happened if there had been no heavy storm, yet if the negligence of defendant in either of the other respects, contributed thereto, defendant is liable. Railway v. Green, 38 S. W. Rep., 32, and 36 S. W. Rep., 814; Texas & P. Ry. Co. v. McClane, 62 S. W. Rep., 566; Railway Co. v. Wilson, 24 S. W. Rep., 687; Bonner v. Mayfield, 18 S. W. Rep., 306; Railway v. Whitaker, 11 Texas Ct. Rep., 249; 1 Bailey, Personal Inj., Master and Servant, sec. 963 et seq.

2. The proposition that because Boyce knew of the culvert and of the embankment, he assumed the risks when he started on that run of their being insufficient, is not tenable. He did nothing of the kind. He had the right to assume that defendant had complied with its legal duty in the premises. Railway v. Moore, 68 S. W. Rep., 561; Railway v. Hannig, 43 S. W. Rep., 508.

3. Even if the rule as to sending a man ahead applied, it was for the jury to say whether under all the facts Boyce was guilty of negligence and whether in the exercise of ordinary care he should have complied with it, and their finding is amply supported by the evidence. Railway v. Yarbro, 74 S. W. Rep., 358; Railway v. Cornell, 69 S. W. Rep., 980; Adams' Case, 58 S. W. Rep., 832.

4. The pieces of ties having been fully identified by the witness as railroad ties and having been shown by circumstances to have come from defendant's track, were admissible under the rule of demonstrative evidence to show the condition of the track and in corroboration of the witnesses who had testified as to rotten ties being in the track. Buddensieck Case (N. Y. Sup. Ct.), 57 Am. Rep., 766.

5. The charge complained of was more favorable to defendant than it was entitled to as it only placed upon it the duty of using reasonable diligence in the erection of culverts sufficient to carry off such water as might have been anticipated. The law places an absolute duty on it in this respect, which it can not escape by any degree of care. Railway v. Whitaker, 11 Texas Ct. Rep., 249; Railway v. Gurley, 11 Texas Ct. Rep., 358; Railway v. Ryan, 72 S. W. Rep., 72; Pomeroy Case, 3 S. W. Rep., 981; Bonner v. Mayfield, 18 S. W. Rep., 306; Bonner v. Wingate, 14 S. W. Rep., 790; Houston & T. C. Ry. v. Fowler, 56 Texas, 458; Railway v. Halloren, 53 Texas, 46; Railway v. Huddleston, 9 Texas Ct. Rep., 854.

NEILL, ASSOCIATE JUSTICE.—Appellees, the wife, daughter and mother of Mark R. Boyce, sued appellant for damages resulting from his death, which they alleged was caused by appellant's negligence. The negligence alleged and the defense plead will be indicated by our conclusions of fact and law.

The trial resulted in a judgment for appellees in the sum of $17,500; of which, $10,000 was apportioned to the wife, $5,500 to the daughter and $2,000 to the mother of deceased.

*Conclusions of Fact.*—On July the 2d, 1903, Mark R. Boyce, while in the employ of appellant and in the discharge of his duties as engineer was killed by the derailment and overturning of the engine he was

operating. The evidence is sufficient to show that the defendant was guilty of negligence in failing to use ordinary care in the construction of a culvert across its roadbed, near where the derailment occurred, reasonably adequate to carry off the water that it might have reasonably anticipated the culvert would be required to drain in order to keep its roadbed reasonably safe for its employes in running trains and engines. That by reason of such negligent construction and inadequacy of the culvert the water from a rainfall, such as human foresight could be reasonably expected to anticipate, was backed up against and caused to run over the embankment and wash the dirt away from the ends of crossties which supported the rails of defendant's road, thereby rendering it unsafe and dangerous.

The evidence also is sufficient to prove that the defendant was negligent in failing to exercise ordinary care in maintaining a reasonably safe railway track at the point where the derailment occurred, in that the crossties beneath the rails were rotten and not of sufficient strength at the time of the derailment, in the condition the track was then, to support the engine and prevent it from turning over.

Both these acts of negligence were alleged by plaintiffs as proximate causes of derailment and overturning of the engine which caused the death of Boyce.

The jury may have concluded from the evidence either that the existence of the negligence first found was the proximate cause of his death; or, in the absence of such act of negligence, it may have found that, though the flood from the rainfall was such that human foresight could not be reasonably expected to anticipate, and therefore, an act of God, yet the negligence of defendant in failing to exercise ordinary care in maintaining a reasonably safe track, in that the crossties were rotten and of insufficient strength, concurred in point of time and place with such *vis major* in the overturning of the engine, or so directly contributed to it as to render it reasonably certain that such act of God alone would not have been sufficient to cause the engine to be derailed and overturned.

The evidence is reasonably sufficient to support either finding. And either, in the absence of assumed risk or contributory negligence on the part of deceased, would render the defendant liable.

The death of Boyce was not caused by any risk assumed by him as ordinarily incident to his employment; nor was he guilty of any negligence proximately contributing to his injury. By reason of defendant's negligence in causing the death of Boyce each plaintiff was damaged in the amount assessed by the jury in her favor.

*Conclusions of Law.*—1. While our conclusions of fact dispose of the first, second, third, eleventh, twelfth, and fourteenth assignments, each of them is so urgently insisted upon it is deemed proper to give our reasons for overruling them.

(1.) Under the first, it is insisted that the verdict is without evidence to support it, in (a) that it fails to show that rotten ties, if any, caused or contributed to the wreck, but, on the contrary, the evidence shows that the wreck was caused by the washing away of the portion of the embankment from under the track; (b) that it fails to show

defendant was guilty of any negligence in providing a waterway through its roadbed; and ·(c) it shows there was an extraordinary rainfall or waterspout at the time and place of the wreck, such as could not have been reasonably anticipated by the defendant.

The evidence shows beyond a doubt that the culvert was wholly insufficient to carry off the water and by reason thereof the roadbed was overflowed and a part of its embankment washed from under the crossties which supported the rails. If this insufficiency of drainage was caused by the defendant's negligence and as the ·direct result of such negligence the engine was overturned, it is of no moment whether the defendant was further negligent in having rotten crossties under its rails or whether such ties contributed to the wreck. The question of whether rotten crossties contributed to the derailment and over-turning of the engine becomes material only in the event defendant was not negligent in providing sufficient drainage. Whether it was negligent in this, depends upon whether the rain which caused the overflow of the roadbed was so far outside the range of ordinary human experience that the duty of exercising reasonable care did not require the defendant to anticipate and provide against it. The foundation of the rule that the act of God excuses the failure to discharge a duty is the maxim, *Lex neminem cogit imposibilia.* If, by the use of rea-sonable care, prudence and diligence under the circumstances of a par-ticular case, it is possible to discharge the duty, then those circumstances do not constitute a valid excuse for a failure to perform it. Nothing less than a fortuitous gathering of circumstances preventing the per-formance of a duty as could not have been foreseen or overcome by the exercise of reasonable prudence, care and diligence constitute an act of God which will excuse the discharge of the duty. S. P. Co. v. Schoer, 57 L. R. A., 710. The question as to whether the evidence in regard to an accident shows that it was directly caused by an act of God is one of fact to be determined by the jury. Webb's Pollock on Torts, 606. While the evidence shows that the rain which caused the water to wash over the track was a very hard one, it can not be said from the evidence as a matter of law that by the exercise of reasonable care, prudence and diligence the defendant could not have so con-structed and maintained its culverts as to prevent its rendering its road, at the time and place of the accident, an unsafe place for its trainmen to do the work deceased was engaged in when he was killed. Therefore, as there was evidence from which the jury could have found that the defendant was guilty of negligence in this regard, and such negligence was the proximate cause of the death of Boyce, and, as the verdict is consistent with such findings, we deemed it our duty to give effect to the verdict. These facts must necessarily have been found by the jury, if, as defendant contends, the evidence conclusively shows that the rotten crossties did not contribute to the derailment and overturning of the engine.

If, however, the jury found there was such an extraordinary rain-fall or waterspout as could not have been reasonably anticipated and provided against by the exercise of reasonable care, prudence and dili-gence, then it follows that they found that defendant was negligent in having rotten crossties which were not reasonably sufficient to maintain

the weight of the engine at the time and place of the accident, and that such negligence concurred with and contributed to such extraordinary rainfall in causing the accident and that without such negligence Boyce would not have been killed. Under such findings, the defendant would be liable; for the rule is well settled that "If damage is caused by the concurring force of defendant's negligence and some other cause for which he is not responsible, including the act of God, the defendant is nevertheless responsible if the damage would not have occurred except for defendant's act." Whart. Neg., 123; Shearm. & Redf. Neg., 39; 1 Thompson Neg., secs. 72, 73; Bonner v. Wingate, 78 Texas, 333; Ilfrey v. Railway, 76 Texas, 63; Sonneborn v. Southern Ry. Co., 44 S. E. Rep., 77; Herring v. C. & W. Ry., 45 S. E. Rep., 322.

The evidence was sufficient to prove such negligence, its concurrence with the flood in causing Boyce's death, and that without such negligence the engine would not have overturned and killed him. For the testimony shows that a number of the crossties about where the engine turned over was rotten; that such crossties broke in the middle, and that the few sound ties there did not break. This shows, the embankment being washed from under them, the ties rested on the center of the embankment midway between the rails and that, therefore, the strain or weight was greatest on them at that point. If they had not been rotten they would not have been broken, but would have preserved the equilibrium of the engine and thereby prevented it from overturning. It was, therefore, for the jury to determine whether the engine would have been overturned had not defendant's negligence concurred with or contributed to the act of God (if there were such act) in bringing it about.

(2.) Under the second, it is urged that the evidence conclusively shows that deceased was guilty of contributory negligence in failing to obey the rules of defendant, and, independent of such rule, in failing to stop his train and send a man ahead to see that the track was safe before running into the place where the water was flowing over the track. The rule evidently referred to in this assignment is as follows: "In case of an extraordinary rain, storm or high water, trains must be brought to a stop and a man sent out to examine bridges, trestles, culverts, and other points liable to damage, before passing over. Conductors and enginemen will make careful inquiry at all stopping places, and, where thought advisable, make extra stops to ascertain the extent and severity of storms, taking no risks. In case of doubt as to safety of proceeding, they will place their trains upon the siding and remain there until certain it is safe to proceed."

It is apparent that this rule calls for the exercise of judgment on the part of conductors and enginemen. They must first determine the "case of an extraordinary rain, storm or high water," if they conclude they are confronted with such a "case," then the further duty under the rule attaches of bringing their train to a stop and sending a "man out to examine bridges, trestles, culverts and other points liable to damage." At what point in relation to the bridge, etc., to be examined must the train be stopped and the man sent out? While they "can not cross a bridge before they get to it," the stop should be made

and the man sent out to make the examination before reaching it, or any other point "liable to damage," or attempting to cross it. If this is done before reaching such point, the rule in that regard will be complied with.

While it is true the train was not stopped, nor a man sent out, the culvert or bridge 283, which Engineer Hinds told Boyce at Valley View looked dangerous, had not been reached, but was at least one hundred feet ahead, which gave plenty of space and time to stop, for the train was running very slowly. There was nothing to show that the place where the engine overturned was, within contemplation of the rule, a point liable to damage, or that ordinary prudence, in view of the surrounding circumstances as they then appeared to Boyce, would have required the stopping of the train and sending a man forward to examine the place, or if this had been done that a man sent forward could, under the circumstances, by the most diligent inspection, have discovered the condition of the track which caused the catastrophe. For it was near midnight and very dark, and, save that of the engine, the lightning's flash gave the only light.

At Valley View, three miles from the scene of the accident, Boyce met a freight train drawn by a heavier engine which had just passed safely over the track, and while Hinds, its engineer, told him the water was very high at the first bridge and looked dangerous, he was given no warning or notice of danger at the point where the accident occurred.

With all the light thrown by evidence upon a past occurrence, it is easy to say that if one who suffered death by reason of it had acted differently it would not have occurred. But a man with a duty to perform must "act in the living present," in the light of known facts and circumstances, and his act in the discharge of the duty must be judged by the facts and circumstances as they appeared to him; and if it is such as a man of ordinary prudence, in the light of the same facts and circumstances, would have done, the law acquits him of negligence. The law makes the jury his judges, and will not disturb its verdict unless it can say that, in the light of the evidence, no reasonable man could have reached any other than a different conclusion than that of the jury.

Though running a passenger train, the degree of care and prudence to be exercised by Boyce for his own safety was not, on that account, raised to a higher degree than ordinary care and prudence, i. e., such as a man of ordinary prudence would have exercised under the same or like circumstances.

(3.) The same questions are raised in the third assignment that are discussed in the first and second, and it is unnecessary to reiterate our reasons for holding that it is not well taken.

(4.) By the eleventh, twelfth and fourteenth assignments it is claimed the verdict is excessive. The undisputed evidence showed that deceased was forty-five years old, in good health, with a life-expectancy of twenty-four and one-half years, a skilled engineer earning from $150 to $200 a month and providing well for his family; that his daughter, Ethel, when he was killed, was seventeen years old; that his mother was seventy-one, and that he contributed monthly $25 towards her support. From these facts it was for the jury to assess and apportion

the damages; and we are not able to say that either the aggregate amount or the apportionment of it is excessive. Therefore, by our conclusions of fact, we overruled these assignments.

5. If as urged in the fourth assignment, it were error to permit the witness J. Z. Keel to testify that deceased "was a good provider for his family," it can not avail defendant, for deceased's wife testified without objection, "he provided for his wife and daughter just splendid." With the exception of himself, his wife and daughter composed the family; for his mother was living with her daughter in Nebraska.

6. It appears from the court's explanation appended to the bill of exceptions taken by appellant to the statement of the witness Seiger that "the ties were too rotten to be in the ground for that kind of business" that this statement was brought out by appellant's counsel on cross-examination after the witness had testified that he "saw as many as ten ties broken off that were rotten through and through and there was no good wood in them." It does not take an expert to know that ties, as rotten as the witness stated these were, were too rotten to be in the ground for the "business" of railroad ties. Such would be the opinion of any one of common sense. Therefore, the expression of such opinion by the witness added no force to his testimony, and could not have influenced the jury or prejudiced the defendant. Besides, in view of the court's explanation, it would seem that appellant's counsel induced the witness to repeat the remark after the court had sustained an objection to it when first made.

7. We think the two pieces of rotten wood, the exhibition of which before the jury as evidence is the basis of the sixth assignment, were sufficiently shown and identified as parts of the ties in the road where the engine was wrecked to allow their admission as *real* evidence tending to show the negligence of defendant in failing to use ordinary care in maintaining a reasonably safe road over which to operate its trains. Besides, the evidence is otherwise so conclusive that the ties were rotten where the wreck occurred that the exhibition to the jury of the pieces of rotten wood could not have prejudiced the defendant.

8. By the seventh assignment of error it is insisted that the court erred in permitting plaintiffs to introduce in evidence rule 592 of defendant, as shown by its book of rules found on the person of Boyce after his death, admitted by defendant to be in force at the time of the wreck, which rule is as follows: "During heavy rain storms of wind, rain or snow, whether by night or day, by which injury may be done to the track or bridges, section foremen will at once go over their sections with danger signals, to ascertain if the track is safe for the passage of trains, and points most likely to be injured must be visited first, and special care must be given road crossings, frogs, switches and water tanks, that they may be clear of ice and snow." The grounds of objection were (1) that the rule does not apply to and is not admissible in cases of this kind, and (2) that it has no application to the case as plead by plaintiffs. As to the first objection, we will say, that the rule shows upon its face that it is directly applicable to heavy storms of rain by which an injury may be done to the track or bridges. It is undisputed that this case grows out of a heavy rain storm by which injury was done to the track. So, if the rule does not apply

to this case it can have no application in any case. Evidently the rule was not for ornament but for use. By its observance by employes whose duty is to obey it, dangers to persons and property may, if not averted, be minimized. While defendant's failure to enforce the rule on the occasion in question was not plead by plaintiffs as an act of negligence, nor submitted as an issue in the charge, it was, under all the facts and circumstances surrounding the deceased at the time of the accident, admissible upon the issue of contributory negligence. With his blood it cries out against the defendant from the ground: "You led him to believe that in a storm like this you would send your section foreman over your road with danger signals to ascertain if the track was safe for the passage of trains. You failed to do this and now, as his bleeding and mangled body lies crushed beneath your engine, you can not say he was guilty of contributory negligence in relying upon you doing your duty."

9. The testimony of the witness, complained of in the eighth and ninth assignments, as to the occurrence of other rainstorms in the same section of country as great as the one in question, was admissible as evidence tending to show that the storm was such as might have been reasonably anticipated and its distastrous effects provided against. San Antonio & A. P. Ry. Co. v. Gurley, 11 Texas Ct. Rep., 357, 83 S. W. Rep., 842.

10. By referring to the bill of exceptions upon which the tenth assignment is predicated it is seen that appellant proved the very thing by the witness Rourke which it complains of not being allowed to prove.

11. While article 4436, Revised Statutes, is generally applied to cases of damages to lands caused by reason of the failure of railway companies to observe its provisions in constructing their roadbeds, it is not expressly limited in its application to such cases; and it would seem as illustrated by the facts in this case, there is as much reason for holding it applicable to cases of this character as in cases of the other kind. But however this may be, in view of the principle that it is the duty of the master to use ordinary care to furnish his servants a reasonably safe place to work, and as a roadbed is a place where a railroad's employes engaged in running its trains must do their work, reasonable safety at such a place necessarily requires "reasonable diligence in the construction of culverts adequate to carry off all the water that might reasonably be expected by a reasonably prudent engineer to fall on the land to be drained by the culverts during such rains and storms as could reasonably be anticipated to occur, taking into consideration the natural lay of the land," and "if," as the court charged the jury, "the defendant did not use ordinary care in the construction of its culvert across its roadbed near the place where Boyce lost his life, and the same was so negligently constructed as to be insufficient and inadequate to carry off the water that might reasonably be expected to fall in the section of country intended to be drained by said culvert, and if, on account of such inadequacy, the water that had fallen on said section of country at the time of the accident could not escape through such culvert, but was forced back along defendant's roadbed and thereby loosened or washed the dirt away from the crossties on

said roadbed, thereby causing defendant's railway to give way and turn over the engine then being operated by Boyce, thereby killing him, the defendant would be liable for his death." The charge simply leaves the question of negligence for the jury to determine, and announces the legal effect of such negligence if found by the jury to have been committed by the defendant. The employe of a railroad company whose place to work is on its road has the right to assume that the company has exercised ordinary care to make it a reasonably safe place for him to do his work, and unless he knows that this duty has not been discharged, and the danger incident to such failure, he assumes no risk arising from the failure of the company to do its duty in this regard.

12. The fourth paragraph of the court's charge, which is as follows: "If you believe from the evidence in this case that through lack of diligence and ordinary care the defendant permitted the crossties on its roadbed at the point of the accident to become decayed and rotten, and that said condition of the ties contributed to the killing of the said Boyce by causing the engine to turn over, and if you further believe that defendant knew of the condition of its crossties, or by ordinary care could have known of the same, then you will find for plaintiffs," when read and construed in connection with other parts of the charge, is not obnoxious to the objections urged against it in the seventeenth assignment of error. When so construed, it is but an enunciation and application of the well settled principle that "if damage is caused by the concurring force of defendant's negligence and some cause for which he is not responsible, including the act of God, the defendant is nevertheless responsible if the damage would not have occurred except for defendant's act," referred to and discussed, in its application to the facts of this case, in our first conclusion of law.

13. What we have said in our conclusions in disposing of other assignments is conclusive against the correctness of the eighteenth, nineteenth, twentieth, twenty-first, twenty-second, twenty-third, twenty-fourth, twenty-fifth, twenty-sixth, twenty-seventh, twenty-eighth, twenty-ninth, thirtieth and thirty-first assignments of error.

There is no error in the judgment requiring its reversal and it is affirmed.

*Affirmed.*

Writ of error refused.