ATCHISON, T. & S. F. RY. CO. et al. v. BOYCE et al. (No. 680.)

(Court of Civil Appeals of Texas. Amarillo. Nov. 28, 1914.)

1. CARRIERS (§ 223*) — CARRIAGE OF LIVE STOCK—DAMAGES FOR DELAY—DEFENSES.

Where a carrier knew that an unprecedented flood had carried away a bridge on its line, but accepted a shipment of cattle without informing the shipper of that fact, it cannot justify delay on account of the flood; for it was its duty, if the shipment would be delayed, to notify the shipper, so that he might seek accommodations on other lines.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 932; Dec. Dig. § 223.*]

2. APPEAL AND ERROR (§ 1140*)—DETERMINATION—REMITTITUR.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 2014, authorizing a remittitur in vacation, a judgment must be affirmed where appellee, after the perfection of an appeal, remitted damages improperly awarded, though costs will be taxed against the appellee.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4462-4476; Dec. Dig. § 1140.*]

3. CARRIERS (§ 183*) — ACTIONS— JOINT LIABILITY.

Under the amendment to the Interstate Commerce Act (Act June 29, 1906, c. 3591, § 7, 34 Stat. 593 [U. S. Comp. St. 1913, § 8592, pars. 11, 12]) § 20, providing that the holder of a bill of lading shall not be deprived by that section of any right he has under existing law, and that the carrier issuing the bill of lading shall be entitled to recover from the carrier on whose lines loss occurs the amount which it may be required to pay to the owner, a shipper of live stock may jointly sue the initial and con-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

necting carrier for damages for delay occurring on the line of the connecting carrier.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 830, 831; Dec. Dig. § 183.*]

4. APPEAL AND ERROR (§ 742*)—ASSIGNMENTS OF ERROR—SUFFICIENCY.

An assignment of error unaccompanied by the required statement will not be considered.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 3000; Dec. Dig. § 742.*]

Appeal from Dallam County Court; T. S. Mills, Judge.

Action by J. H. and L. H. Boyce, partners as Boyce Bros., against the Atchison, Topeka & Santa Fé Railway Company and others. From a judgment for plaintiffs, certain defendants appeal. Affirmed.

Terry, Cavin & Mills, of Galveston, Madden, Trulove & Kimbrough and H. C. Pipkin, all of Amarillo, Thompson & Barwise, of Ft. Worth, and Moore & Powell, of Dalhart, for appellants. W. Boyce, of Amarillo, for appellees.

HUFF, C. J. This is an action instituted by the appellees, Boyce Bros., a copartnership composed of J. H. and L. H. Boyce, against the Atchison, Topeka & Santa Fé Railway Company, the Southern Kansas Railway Company of Texas, and the Ft. Worth & Denver City Railway Company, for damages alleged to have been sustained by reason of the delay in the shipment of 59 head of cattle, under a contract of through shipment from Hartley, Tex., to St. Joseph, Mo., over the lines of the defendant railways. Trial was had in the county court of Dallam county, and judgment rendered for appellees against the Ft. Worth & Denver City Railway Company and in its favor against the Atchison, Topeka & Santa Fé Railway Company.

The appellant the Atchison, Topeka & Santa Fé Railway Company presents its first assignment that the court erred in refusing its third specially requested instruction to the jury, which charge is to the effect, after defining "act of God" and "unprecedented flood," if appellant exercised ordinary care to build and maintain a bridge across Driftwood creek at the point of the washout, to accommodate the ordinary and usual flow of water thereunder and floodwaters, and so constructed and maintained said bridge, that it was sufficient to withstand and accommodate ordinary and usual floodwaters and such as had been before known in that country and might have been reasonably anticipated by the exercise of caution, prudence, and foresight, and if the jury found—

"on or about the 5th day of August, A. D. 1911, there came an unprecedented and unexpected flood down said stream and under said bridge, so that it washed out a portion of said bridge, so that it made said bridge impassable by trains of this defendant, and if you further find and believe from the evidence in this case that such washout was of such an unprecedented nature that it was the act of God, as same is above defined, and you further find and believe from the evidence that said defendant exercised ordinary care to properly prepare said bridge for transportation of said shipment thereover at the earliest time after said washout in the exercise of ordinary care, and if you further believe and find from the evidence that the delay of said cattle or any part thereof was caused directly and proximately by said unprecedented flood washing out said bridge, then in that event you will find for the defendant for all the damages, if any, by reason of the delays to said shipment incident to said unprecedented flood and washout of said bridge."

The appellant, by its answer, with reference to the matter of the washout of the bridge, alleged that the bridge was a good and substantial one maintained for many years prior to August, 1911; that it had never been washed out by the rising or flooding of the stream; that by reason of an extraordinary heavy rain or cloud-burst it became flooded as never before. The flood was unusual, unprecedented, and could not, in the exercise of ordinary care, prudence, and foresight, have been foreseen, anticipated, etc.

The appellees, Boyce Bros., by a supplemental petition, alleged in reply thereto that, if such washout was caused by an unprecedented flood, nevertheless the railroad would be responsible, because said washout occurred before the cattle were loaded at Hartley, and before they were accepted by the Santa Fé lines at Amarillo, and that such fact was well known to the defendants at the time of acceptance of such shipment, and was unknown to appellees.

The defendant the Ft. Worth & Denver City Railway Company alleged that it notified the other defendants of such shipment, and that the other defendants accepted said shipment for transportation. The evidence shows that the cattle were loaded at Hartley, Tex., at 12:50 p. m. August 5th, and that they arrived at Amarillo over the Denver road, and were by it delivered to the Southern Kansas Railway Company of Texas at 5:30 p. m. the same day. The Ft. Worth & Denver City Railway Company gave the Atchison, Topeka & Santa Fé Railway Company advance notice of the loading of the shipment at 12:50 p. m. August 5th. The shipment left Amarillo August 5, 1911, over the line of the Southern Kansas Railway Company of Texas, at 6:40 p. m., and reached Canadian, a distance of 99 miles, at 9:55 p. m. that day. It left Canadian, Tex., at 10:50 p. m. August 5th, and arrived at Wynoka, Okl., at 10:20 a. m. August 6, 1911, and on account of the washout there were no trains, outside of work trains, taken out of Wynoka August 6, 1911. The cattle were unloaded at Wynoka and held there until the succeeding day; leaving that point at 12:45 p. m. August 7, 1911. The bridge was washed out at 10:30 a. m. August 5, 1911, and the superintendent of that road had notice of such fact at 11 a. m. on that date. The first train passed

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

over the bridge after its repair at 12:10 p. m. August 7th. The evidence introduced by appellants tends to show that the flood was an unusual one and unprecedented in that neighborhood. It also tends to show that it used ordinary care in constructing and maintaining a bridge across the stream, giving to the bridge sufficient strength to withstand an ordinary and usual flood on the creek at the point where its line of road crossed. Boyce Bros. had no notice of the washout at the time they loaded out the cattle for shipment. The trial court instructed the jury as follows:

"Although you may find said shipment of cattle was delayed in course of transportation, still, if you should further find and believe from the evidence that such delays, if any, or any part thereof was caused by a washout on the line of the Atchison, Topeka & Santa Fé Railway Company, as alleged, and you should further find that said washout was caused by an unprecedented flood, then the defendant the Atchison, Topeka & Santa Fé Railway Company and its connecting line would not be liable to the plaintiffs for damages caused by any delay resulting from said washout, unless you should further find that the defendant the Southern Kansas Railway Company of Texas, in accepting said shipment at Amarillo, Tex., had notice of the fact of the washout, or that the Atchison, Topeka, & Santa Fé Railway Company was guilty of negligence in failing to inform its connecting line, the Southern Kansas Railway Company of Texas, or the Ft. Worth & Denver City Railway Company, of the fact of such washout on said line of road. But if you find and believe from the evidence that said washout had already occurred at the time of the acceptance of said shipment at Amarillo, Tex., by the defendant the Southern Kansas Railway Company of Texas, and find that said defendant at such time had knowledge of the condition with reference to said washout, then said railway companies, the Southern Kansas Railway Company of Texas and the Atchison, Topeka & Santa Fé Railway Company, nevertheless, would be responsible for the delay, although it was caused by a washout resulting from an unprecedented flood. Or, if you should find that said washout occurred prior to the acceptance of said shipment of cattle at Amarillo, and that, in the exercise of ordinary care, it was the duty of the Atchison, Topeka & Santa Fé Railway Company to notify its connecting lines, the Southern Kansas Railway Company of Texas or the Ft. Worth & Denver City Railway Company, of the condition existing on its said line, and you further find that it failed to give notice to said other defendants or either of them, and that such failure to give such notice was negligence, and that by reason thereof said shipment was accepted either by the Ft. Worth & Denver City Railway Company or by the Southern Kansas Railway Company of Texas in ignorance of the condition existing on the line of the Atchison, Topeka & Santa Fé Railway Company, and that the plaintiffs were also ignorant of such condition at the time of the delivery of said shipment at Hartley, Tex., and its acceptance by the Southern Kansas Railway Company of Texas at Amarillo, then, and in such event, the defendant the Atchison, Topeka & Santa Fé Railway Company would be responsible for the damages, if any, resulting from the delay, if any, that may have been caused by the washout on its line."

[1] In paragraph 4 the court defined the term, "unprecedented flood." The effect of this charge was to tell the jury that the appellees could not recover if the delay was caused by the washout occasioned by an unprecedented flood, unless they further find that the washout occurred before the cattle were accepted by either of the roads for shipment, and that appellant was negligent in not notifying the shipper and the connecting carrier of the then condition of the road. We believe the charge requested by appellant, if given as requested, without the qualification added by the trial court, would have been error under the facts of this case. If there were unusual conditions existing at the time of receiving the cattle for transportation and because of the then condition of the road, and the shipment could not be made in the usual time, the carrier should have notified the shipper of such condition. Such notice would have given the shipper the opportunity to choose the different courses then open to him. Railway Co. v. Stark Grain Co., 103 Tex. 542, 131 S. W. 410; Nelson v. Great Northern Railway Co., 28 Mont. 297, 72 Pac. (7), on page 651; Railway Co. v. Word, 159 S. W. 383. If the delay was caused by the washout, which could not have been prevented by the use of ordinary care in the construction and maintenance of the bridge across the stream, yet, if the injury to the shipment of cattle was brought about by the negligent failure of appellant to notify the appellees of the then known condition of the road, or, when the cattle were accepted for transportation, if the appellant then knew of the unusual condition, and undertook to carry the cattle to their destination within a reasonable time, we think it should be required to answer for the consequences, if such acts were negligent, as though this negligence on its part was the sole cause. Fentiman v. Railway Co., 44 Tex. Civ. App. 455, 98 S. W. 939; Railway Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395.

[2] The second assignment is that the verdict of the jury and the judgment of the court is excessive, in that a recovery was allowed for a decline in the market on the cows involved in the shipment, when the evidence does not show a decline in the market on the cows. In vacation the appellees filed the following:

"Now come the plaintiffs, J. H. Boyce and L. H. Boyce, and remit the sum of $46.16 of the judgment rendered in this court in the above numbered and entitled cause on the 30th day of January, 1914, the sum of $46.16 hereby remitted being the sum of $37.26, with interest thereon from the 9th day of August, 1911, to this date—said sum of $37.26 being the amount in the judgment rendered herein on account of decline in market on cows in said shipment, to wit, 24,840 pounds at 15 cents per cwt.; and the said J. H. Boyce and L. H. Boyce, composing said partnership, do hereby release said defendant in said judgment therefrom as to the extent of said sum of money, to wit, $46.16."

This remittitur was filed March 9, 1914, in the county court. The motion for new trial set up the error herein complained of, and was presented to, and overruled by, the

court February 7, 1914. In the order overruling the motion notice of appeal was given. Appellant the Atchison, Topeka & Santa Fé filed its appeal bond February 27, 1914, and the Ft. Worth & Denver City Railway Company its bond February 21, 1914. The trial court adjourned February 7, 1914.

The appellees having remitted this damage recovered in the judgment after appeal had been perfected under article 2014, Vernon's Sayles' Civil Statutes, we think the judgment should be affirmed as to appellant for the amount of the judgment, less the remittitur, but that appellees should pay the costs of this appeal. White v. Glover, 31 Tex. Civ. App. 8, 71 S. W. 319; Insurance Co. v. Herbert, 48 Tex. Civ. App. 195, 106 S. W. 421.

[3] The Ft. Worth & Denver City Railway Company assigns error No. 1, and claims that there was error on the part of the trial court in overruling its second special exception to plaintiffs' petition, which is to the effect that the plaintiffs were attempting to hold it, as the initial carrier, for all the damages and each of the defendants for the same damages, asking the trial court to require the plaintiffs to elect whether they are attempting to hold the defendant as an initial carrier or under its common-law liability. Plaintiffs, appellees herein, sued the defendant railroads jointly for the damages, alleging a contract entered into between themselves and the Ft. Worth & Denver City Railway Company for a through shipment of 59 head of cattle from· Hartley, Tex., to St. Joseph, Mo., over the lines of the road operated by the defendants from the point of origin to point of destination. The allegations clearly bring the case under the amendment to the Interstate.Commerce Act, §.20. That portion of the act applicable is as follows:

"Provided that nothing in this section shall deprive any holder of such receipt or bill of lading, of any remedy or right of action which he has under existing law; that the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained the amount of such loss, damage or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment or transcript thereof."

The act was passed for the benefit of the shipper. He can sue the initial carrier alone or any one of the connecting carriers, or all jointly ·for the damages. Railway Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683; Railway Co. v. Ray, 127 S. W. 281; Railway Co. v. Word, 159 S. W. 375; Railway Co. v. Ward, 169 S. W. 1035. We do not understand that an election can be required where a party's rights are analogous, consistent, or concurrent. As we understand, under the Interstate Commerce Act, the contract is made by the initial carrier for all connecting carriers, by the terms of which each and all are bound, and a failure of duty

or the negligence of either gives the shipper a right of action against either or all under the act against the initial carrier for all the damages and the connecting carriers for the damages occurring on their respective lines.

[4] The second assignment of the Ft. Worth & Denver Railway Company is overruled. There is no statement under this assignment, such as required by the rules, and we cannot therefore tell therefrom whether the judgment was excessive or not, as asserted under the assignment.

The third assignment has been discussed under the Atchison, Topeka & Santa Fé Railway Company's second assignment. It is therefore unnecessary to notice this assignment further.

The judgment of the trial court, after allowing the remittitur filed, will be affirmed, but the appellees will be taxed with the costs of this appeal.