NATIONAL COMPRESS CO. v. HAMLIN.
(No. 9136.)

(Court of Civil Appeals of Texas. Dallas.
June 7, 1924. Rehearing Denied
July 5, 1924.)

1. Warehousemen ⬿34(9)—Act of God relieving warehouseman from liability for losses from flood, question for jury.

To relieve a warehouseman from liability for loss from a flood caused by unprecedented rains, the damages must have been unpreventable by human foresight, strength, or care, and ordinarily whether a rain can be ascribed as an act of God, relieving' a warehouseman from liability, is a jury question.

2. Warehousemen ⬿34(9) — Negligence of warehouseman in failing to guard against loss from flood held for jury.

In an action by the owner of cotton against a warehouseman for loss from a flood, where a platform on which cotton was stored had been overflowed a few years previous, although when built it was as high as any previous flood, and although there had been a long-continued spell of rain no precautions were taken, the refusing peremptory instruction for defendant was not error.

3. Warehousemen ⬿24(7)—Property owner held not bound by recitals in receipts.

In an action by owner of cotton against a warehouseman for loss from a flood where receipts were not delivered to the owner until after the damage and he did not know of conditions contained therein that the cotton was stored at the risk of the owner at the time of storage, he was not bound by the recitals of the receipts, and excluding them from evidence was proper.

4. Assignments ⬿132—Exclusion of testimony as to how much assignee paid for claim held proper.

Where the assignee of a claim for damages sued thereon, the amount paid for the claim was not material to any issue under pleadings.

Appeal from District Court, Ellis County; W. L. Harding, Judge.

Action by R. M. Hamlin against the National Compress Company. From judgment for plaintiff, defendant appeals. Affirmed.

Sharp & Tirely, of Ennis, and Sleeper, Boynton & Kendall, of Waco, for appellant.

J. T. Spencer, of Waxahachie, for appellee.

JONES, C. J. Appellant has duly perfected its appeal from a judgment awarding damages in favor of appellee in the sum of $1,935.96. This judgment is based upon the following facts:

Appellant is the owner of a cotton compress located in the city of Waxahachie and, in its operation, receives cotton in bale, both for immediate compressing and for storage and ultimate compressing. A short time previous to April 25, 1922, appellee delivered to appellant 32 bales of cotton for storage and ultimate compressing, and, at approximately the same time, the M. T. Patrick estate delivered to appellant for storage and ultimate compressing 76 bales of cotton. As compensation for the storage, appellant charged appellee and the M. T. Patrick estate the sum of 40 cents per bale for the first 15 days in which said cotton was in storage and 1 cent additional each day per bale thereafter as long as said cotton was held by appellant in storage. These fees were paid both by appellee and the M. T. Patrick estate. At the time appellant received this cotton, it caused same to be weighed and tagged and placed on its compress platform.

Appellant's compress was constructed in the year 1895 and consisted of the usual buildings, sheds, and platforms used in the conduct of such business. This construction was near the Missouri, Kansas & Texas Railway tracks and near Waxahachie creek, being some 40 or 50 yards from the bank of said creek. Waxahachie creek was a stream that ran through the southern portion of the city of Waxahachie and was subject to frequent overflow. At the time of the construction of this compress, the highest known point which the overflow waters of said creek had attained had occurred during the year 1887. Appellant constructed its platform on a level with this high-water mark. The Missouri, Kansas & Texas depot in the city of Waxahachie was built also in the lowlands of this creek, and its floors were placed on the level of this high-water mark of 1887; its construction being previous to the compress construction. Some distance from where this compress was built, a branch, also subject to overflow, emptied its waters into Waxahachie creek; the compress being constructed in the fork of said branch and Waxahachie creek. The cotton in question was stored on a platform with very large openings and in no way safeguarded to hold cotton within the bounds of the platform in case of an overflow that would be sufficient to wash the cotton away. On the morning of April 25, 1922, Waxahachie creek overflowed its banks and its flood waters inundated the cotton platform and the force of the flood waters washed the said cotton bales from off the platform and damaged the cotton in the amount given in the judgment. The high-water mark reached on the morning of the 25th was approximately 30 inches higher than the mark reached by the overflow of 1887. There had been, just previous to this overflow, very heavy rains, both above and below the city of Waxahachie along said creek, so that the ground was thoroughly soaked with water and incapable of absorbing any of the rain that fell on the evening of the 24th and the morning of the 25th of

⬿For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

April. The rain was not in the form of a "cloud-burst," but was a very hard downpour, and Waxahachie creek began to overflow its banks at approximately 5 a. m. of said day, and the flood rose rapidly, reaching its crest at approximately 7 a. m. While Waxahachie creek was the subject of frequent overflows, only at one other time since the erection of the compress platform had its flood waters subjected the said platform to overflow. This was in the year 1918, about four years previous to the flood in question. Some damage was done to cotton on the platform at that time.

Appellant denied responsibility for the damage suffered by appellee, and this suit resulted, appellee having subsequent to the flood, and previous to the filing of the suit, purchased from the M. T. Patrick estate the claim for damages to the cotton belonging to said estate.

Appellee based his rights to recover on the theory, as reflected by his petition, that, at the time appellant accepted and received the said cotton for storage, it placed same for such storage upon its platform, sheds, and compress buildings, which it knew were unsafe, unsuitable, and dangerous for the storage of cotton for the reason that the said sheds and floor of the compress building were too low and subject to overflow from the waters of Waxahachie creek during freshets; further, that in constructing said compress building, platforms, and sheds, it left large openings or doorways in the walls of said building, without doors or other means of closing same and without any means to prevent the water from washing cotton off and out of said building during such freshets, and that such construction and such want of protection was negligence on the part of appellant.

It was further alleged that if said compress building had been constructed with floors, platforms, and sheds three feet higher than they were constructed, the same would have been a safe and suitable place for the storage of cotton and free from damage from flood waters of said Waxahachie creek; and, further, that appellant was guilty of negligence in such construction, in that it failed to place doors or other means of inclosure in the open ways of said compress building, and failed to construct retaining walls and other means of protection around said buildings, sheds and platforms, which would have protected appellee's cotton from said flood waters.

Appellee also alleged the long, continued rains that caused Waxahachie creek to overflow its banks and inundate the said platforms and floors of the compress building on April 25, 1922, and wash away the said cotton and thereby cause the damages appellee claimed in this suit.

Appellant answered by general denial and a special plea that it had exercised due care in the location of its compress and in building its platform above the high-water mark of Waxahachie creek; that if it were negligent in so constructing and locating its platform, as alleged by appellee, that appellee and the representative of the M. T. Patrick estate were duly informed of the location and height of the platform and of the overflows of Waxahachie creek at the time the said cotton was placed on its platform, and that appellee and the said representative of the Patrick estate were thereby guilty of contributory negligence that either caused or contributed to cause the damage suffered; and the further special plea that the damage to the said cotton was the direct result of an unprecedented flood, which could not have been reasonably expected or anticipated or provided against, and was therefore the act of God.

The case was tried to a jury and submitted on a general charge and a general verdict rendered in favor of appellee for the amount of the judgment. The court's charge was carefully prepared and submitted the issue of negligence raised by appellee's pleadings and the evidence, and also the defensive issue of contributory negligence and the issue as to whether the overflow of Waxahachie creek was so extraordinary and unprecedented that its extent and resulting effect could not have been reasonably expected or anticipated and provided against by the exercise of ordinary care of prudent persons in appellant's situation. In addition to this, the court gave a special requested charge at the instance of appellant, to the effect that, if the jury should find from the evidence that at the time the said cotton was placed by appellant upon its compress platform, appellant did not know that said platform was unsafe and dangerous for the storage of cotton, or that it was thereby subjecting the same to damage from the overflows of Waxahachie creek; and if the jury should further find from the evidence that in so placing the cotton upon its platform, appellant used ordinary care in the handling and storing of said cotton, and that it was not guilty of negligence in respect to the placing of said cotton upon said platform for storage and compressing, the verdict should be for appellant.

The court also gave approved definitions of the terms "negligence," "ordinary care," "contributory negligence," and "act of God."

There were no exceptions reserved to the manner and form in which the issues made by the pleadings and evidence were submitted to the jury. The theory of appellant, however, was that under the evidence the court should have held, as a matter of law, that appellee's damages were the result of an "act of God," and that its motion for judgment in its favor, as well as its request for peremptory instructions for a verdict in its favor, should have been given, and that no

issues of fact should have been submitted to the jury. Appellant duly reserved its exceptions under this theory and has filed in this court proper assignments of error in respect thereto, and insists that this court should reverse and render this cause in its favor.

[1] It follows that the main question for decision in this case is: Was the rain that caused the overflow of Waxahachie creek, the inundation of appellant's cotton platform, and the resultant damage to appellee, so extraordinary and unprecedented as to constitute, as a matter of law, an "act of God" within the meaning of that phrase as it is used in law? Of course, rains, when viewed from their physical aspect, are an act of God, whether they are unprecedented in amount or otherwise. In order, however, for unprecedented rains to relieve a warehouseman from resultant damages, the evidence must preclude the fact that the damages could be attributable in any degree to the conduct of the warehouseman. In other words, the damages must not have been preventable by human foresight, strength, or care. If a warehouseman's negligence gives an unprecedented rain an opportunity to operate, and this opportunity could have been guarded against by reasonable prudence and foresight and by the use of precaution that careful persons in the same line of business would have used, then the warehouseman is not excused because the rain was unprecedented. It necessarily follows, therefore, that, ordinarily, whether a rain can be ascribed as an "act of God" and relieve a warehouseman of responsibility for damages is a question for the jury. Sometimes, in cases of great floods, as, for example, the two at Galveston in the years 1900 and 1915, respectively, and the previous one at Johnstown, Pa., whose destructive powers come with such sweeping force that no reasonable man can conclude that human foresight could have guarded against the effects, it is held, as a matter of law, an "act of God" against which those who suffer damages have no recourse.

[2] In the present case there was evidence coming both from the testimony of witnesses and from fair inferences from other facts, the tendency of which was to exonerate appellant from any negligence. We are of the opinion, however, that the evidence in this case, on the whole, does not show that this rain was of such an unprecedented character that the court could have assumed, as a matter of law, that appellant could not be guilty of negligence in failing to take other measures to guard against its results than those it had taken. Its position virtually is that, having constructed its platform on a level with the highest point the floods from Waxahachie creek had theretofore reached, it had done all that an ordinarily prudent person would have done under the circumstances. To this contention we cannot agree. Appel-

lant knew that the ground on which the compress was built was subject to frequent overflows; that in the year 1918 water from such overflows had swept over its platform; that there had been a long, continued spell of rain, and it is fairly inferable that there was presented to it at least a warning that a continuance of the rain might result in the very thing that happened. Yet it made no effort to guard against this, but rested the security of the cotton it accepted for storage on its theory that no flood would rise appreciably higher than had theretofore risen from said creek. If the platform had been a few feet higher, no damage would have occurred. If steps had been taken to protect the cotton from washing off the platform as it stood, the damages would have been at least appreciably lessened. Under a charge as fair to appellant as the law and the facts would warrant, the jury determined by its verdict that appellant did not exercise the care the law enjoined upon it when it accepted appellee's cotton for storage. G. C. & S. F. Ry. Co. v. Boyce, 39 Tex. Civ. App. 195, 87 S. W. 395; Hecht et al. v. Boston Wharf Co., 220 Mass. 397, 107 N. E. 990, L. R. A. 1915D, 725, Ann. Cas. 1917A, 445; Gleeson v. Railway Co., 140 U. S. 435, 11 Sup. Ct. 859, 35 L. Ed. 458; 28 R. C. L. 993, 994.

We therefore hold that the pleadings and evidence raised issues of fact to be submitted to the jury, and the court did not err in refusing the peremptory instruction.

[3] Appellant had assigned error on the court's refusal to admit in evidence certain receipts issued by appellant for this cotton. The effect of these receipts was an acknowledgment by appellee and the representative of the Patrick estate that the cotton was held in storage at the risk of the owner; at least, so far as concerned damages resulting from flood waters. The evidence is undisputed that these receipts were never delivered, either to appellee or to any representative or agent of the Patrick estate, until after the damage occurred, and that neither party knew of such conditions when the cotton was stored. Appellee could not, therefore, be bound by any of the recitals in said receipts. They constituted no part of the contract of storage. This assignment of error is overruled.

[4] Appellee brought the suit, so far as the damage to the 76 bales of cotton that had been stored by the Patrick estate is concerned, as assignee from the Patrick estate of this claim. In his petition he alleged that he was the owner of this claim as such assignee. This ownership was in no way attacked by appellant in its answer. After appellee, while a witness for himself, had testified that he was the owner of this claim, and had identified the written transfer to him, appellant attempted by questioning to have him state to the jury what consideration he paid for such claim. The court sus-

tained the objection of appellee's counsel to this question, and error is assigned on this ruling. This assignment is not well taken. It was not material to any issue under the pleadings· as to what appellee paid the Patrick estate for this claim.

There are other assignments of error in reference to the introduction of evidence. which we have carefully examined, and in which we find no merit, and they are overruled.

Finding no error in the trial of the case that would call for a reversal, it is the opinion of the court that the judgment should be affirmed.

Affirmed.